175 So.2d 692 (1965)
Edith STEWART
v.
Wesley A. STEWART, Jr.
No. 6415.
Court of Appeal of Louisiana, First Circuit.
May 24, 1965.
Cashio & Cashio, Baton Rouge, for appellant.
Robert L. Roland, of Watson, Blanche, Wilson, Posner & Thibaut, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, LANDRY, BAILES and KEARNEY, JJ.
LOTTINGER, Judge.
This is a suit for separation from bed and board filed by petitioner, Edith Stewart, against her husband, defendant Wesley A. Stewart, Jr., on the grounds of cruel treatment. Petitioner also seeks custody of her three minor children and alimony for herself and said children. The defendant denied petitioner's allegations of cruelty and reconvened seeking a separation from bed and board on his behalf on the grounds of abandonment and cruelty. The Lower Court awarded judgment in favor of petitioner and against defendant, and dismissed the defendant's reconvention. The defendant has taken this appeal.
We are not favored with the transcript of the testimony in the Lower Court. However, after trial of the merits oral reasons for judgment were given by the Lower Court, and are contained in the record of this proceeding and an opinion on an *693 application for a new trial is also contained in the record. Part of which is as follows:
"We have listened very attentively to the testimony in this case. This couple has had difficulties for a number of years, dating back at least three years. The best that we can sum the testimony up is that in our opinion and based on all of the facts and all of the evidence as has been presented, we find that the plaintiff, wife, has made considerable effort with respect to the salvage of her marriage. The husband contends that the efforts on the part of his wife are misdirected and that she is emotionally ill, neurotic, etc.
"There is nothing in the record that leads to any conclusion of this type with the exception of the wife's continual efforts over a period of years to seek counseling. The defendant, husband repudiated the testimony of his own witness Reverend Lowe; of his own witness, Reverend Prager. He is very critical of a Mr. Hazelwood, who was his wife's former pastor. Now, this criticism may be justified but the justification of such criticism is not supported by any evidence and we must therefore conclude that in the absence of being supported that the criticism is unjustified.
"We think that it is very significant that when a Mr. Moore went to his wife to ask her to assist at a Church function that the defendant made a very critical remark to Mr. Moore. We also attach significance to a remark made by the defendant with respect to Family Counseling. He stated that he quit going to Family Counseling because it was not helping his wife. Now, this may be true but the record doesn't support it. This record shows that the wife has for a period of years sought counseling.
"Now, at the sake of being redundant we feel that our appraisal of the evidence presented in this matter is fortified by the statements made by the defendant in his repudiation of Reverend Lowe, Reverend Prager, the neighbors, the Church, Family Counseling and even of the psychiatrist that he directed and subpoenaed his wife to appear before. We think of equal significance is that when he and his wife had an argument he would put theput a for sale sign on the home. He did in fact forbade his wife to visit at least one neighbor and the neighbor's husband testified that to his knowledge Mrs. Stewart had never made a derogatory remark about Mr. Stewart.
"Now, Mr. Stewart must bear the responsibility of imposing these restrictions on his wife and family. If he fails to prove that they were, in fact, reasonably made, we are deciding this case on the evidence as presented in this Court room and there is nothing to justify the accusations made by Mr. Stewart for imposing such restrictions on his wife. We must frankly come to the conclusion that Mr. Stewart has alienated his wife over a period of years with an attitude that he is the one that is always right. If this is overly critical of Mr. Stewart we apologize but that is the way the evidence appears to us; that is the way the witnesses appear to us and that is particularly the way that Mr. Stewart appears to us. We believe that the expose that Mr. Stewart gave about the psychiatrist is probably typical of his general feeling with respect to the Church as it relates to Mrs. Stewart, and to the neighbors as they relate to Mrs. Stewart."
The application for a new trial was based upon evidence adduced below to the effect that upon petitioner returning home from attending Church services with her children on Sunday morning, September 22, 1963 about 11:00 o'clock a. m., the defendant administered a spanking to the oldest boy, claiming that his son had disobeyed him. Petitioner, however, stated that the *694 spanking was administered the boy because he had attended Church with her, and, that during the course of the spanking defendant made some very derogative remarks about Church and the attendance thereof. The petitioner claimed that she then and there determined to leave him, however, she was unable to make arrangements for leaving the marital home until Tuesday, September 24, 1963. Be that as it may, there was apparently no further difficulty between petitioner and defendant from the time of the spanking on Sunday until her leaving the marital domicile on Tuesday. As it is set forth in the record, and in the opinion of the Lower Court it is shown that on the Monday night previous to petitioner's leaving the marital home, she shared the same bed with defendant and had sexual relations with him. The defendant alleges that this act of voluntary sexual intercourse on the part of petitioner on the night prior to her abandoning him affected a reconciliation between them under the provisions of Article 152 of the LSA-Civil Code which provides as follows:
LSA-C.C. 152. "The action of separation shall be extinguished by the reconciliation of the parties, either after the facts which might have given ground to such an action or after the action has been commenced."
In holding that the action of Monday night was not a reconciliation and, in refusing the application for a new trial, the Lower Court stated as follows:
"In Humes v. McIntosh [225 La. 930], 74 So.2d 167, the plaintiff-wife sought a divorce from her husband on the grounds of adultery. The defendant admitted his adulterous relations with the woman named in the petition and it was established that two children were born, one in 1943 and the other in 1946. She filed her suit in 1951. In affirming the lower court's judgment of dismissal, the court said: (p. 168)
* * * `In the final analysis, the case resolves itself into a question of fact, and the judge, who saw and observed the witnesses, concluded that the husband had sustained the burden of proving that his wife knew of his adulterous acts and yet continued their marital relations for several years. * * *'
In Collins v. Collins [194 La. 446], 193 So. 702, the wife obtained a judgment of separation from bed and board from her husband on the ground of cruelty. The husband appealed. It was shown that some three days before the actual trial commenced, she met and had lunch with her husband. Later that evening, at nightfall, the plaintiff in her car and the defendant in his car drove out to the suburbs of the City, to a somewhat secluded place on the roadside where they parked their cars and had an affaire d'amour, in his car. In reversing the decision of the trial judge, the court said: (p. 703)
`It is sufficient to say that there is no doubt that, on the occasion in question, after the suit was assigned for trial, and only three days before the trial commenced, there was a complete reconciliation of the quarrels and complaints which the parties had had. The wife's conduct towards her husband on that occasion was a condonation of all offenses on his part that she had knowledge of, and was not consistent with an intention on her part to prosecute her suit for separation from bed and board.'
The wife in Pichon v. Pichon [164 La. 272], 113 So. 845, remained in the home in another room for several days following the last act of cruelty of her husband. In reversing the trial court's denial of her claim for a separation the Supreme Court said: (p. 845)
`It is likely that the judge's reason for rejecting the plaintiff's demand was that, in his opinion, she condoned the last act of abuse and cruelty; but we do not find it so. The occurrence *695 was on a Saturday night, and she remained in the house, but in another room, during that night and in fact until Tuesday at noon. Meantime, that is, on Monday, she made arrangements for another place of abode. She had only $15.00 and no welcome that she knew of in any other house. Her remaining in the house with her husband under those circumstances and conditions was not a forgiving of his offense.'
Although the facts in Martin v. Martin [151 La. 530], 92 So. 49 [46] are not similar to those of this case, the opinion did cite 19 Corpus Juris p. 83:
`Condonation, in the law of divorce, is the forgiveness of an antecedent marital offense on condition that it shall not be repeated and that the offender shall thereafter treat the forgiving party with conjugal kindness. There can be no condonation of abuse by a wife by her husband where the past was not discussed and there was no promise of conjugal kindness in the future. Ellithorpe v. Ellithorpe [Iowa], 100 N.W. 328'
`But since sexual intercourse is not necessarily implied from the fact that the parties are living in the same house, it has been held that the fact that a wife remains in the matrimonial domicile performing the usual household activities for the husband, pending an action by her for a divorce, should not be considered as a condonation. 19 Corpus Juris, p. 87
`And the same author declares that one of the requirements of condonation is restoration of the offending party to all marital rights, and that a single act of sexual intercourse is insufficient to constitute condonation. 19 Corpus Juris p. 87' (italics added by us)
The above authorities and the cases cited therein cover a varied range of facts from the wife who cohabited with her husband three days before their trial commenced (Collins v. Collins, supra), to the wife who remained in the home, but in a separate bedroom from Saturday to Tuesday (Pichon v. Pichon, supra). In all of these cases the rule appears to be whether or not the offended party acted reasonably and so as to forgive the antecedent marital offense. In the Collins case the court concluded that the wife's action was not consistent with an intention on her part to prosecute her suit. In point of time she had ample opportunity over a period of months to deliberate on her course of action. The Pichon case is authority for the proposition that a wife may, of necessity, remain in the home for several days, in a separate bedroom, without condoning her husband's cruelty. The extent and duration of the defendant's cruelty in this (Pichon) case is not reported in any appreciable detail.
In applying the jurisprudence of the above authorities, we believe that the extent and duration of the cruelties inflicted and the circumstances and requirements of the wife are factors to be considered in determining whether she has condoned antecedent marital offenses. The occurrence of conjugal relation should be given great weight. But viewed in relation to all the facts, a single act of sexual intercourse is not of itself sufficient to constitute condonation."
There is a wide division between the facts as set forth in Humes v. McIntosh and Collins v. Collins on one part, and Pichon v. Pichon, and Martin v. Martin on the other part. In the Pichon case it was shown that the wife remained in the marital home for several days following the last act of cruelty alleged against her husband, however, she slept in another room and there was no cohabitation between them.
*696 In the Martin case we again find no cohabitation following the acts of cruel treatment, however, the wife did remain in the marital domicile performing the usual household activities for her husband, however, no cohabitation was shown.
However, in the Humes case, where the wife continued marital relations for several years following the misconduction of her husband and in the Collins case where it was shown that some three days before trial on the merits, the wife had intercourse with her husband in a secluded place on the roadside, the Court held that such actions would in effect constitute a reconciliation of the parties.
We do not agree with the statement in the opinion of the Lower Court in quoting 19 Corpus Juris, p. 87 to the effect "* * * that a single act of sexual intercourse is insufficient to constitute condonation." The question of condonation is a question of fact to be determined considering all circumstances surrounding the action of the parties involved.
The act of intercourse is the extreme fulfillment of the marital relationship. The voluntary performance of this action on the part of petitioner, and there is no evidence in the record to show it was other than voluntary, could serve no purpose other than to condone the prior acts of cruelty on the part of the defendant. We, therefore, feel that there was a reconciliation between the parties in accordance with the provisions of LSA-Civil Code Article 152. In Martin v. Martin, 151 La. 530, 92 So. 46, the Court said:
"The word `reconciliation' in the sense in which it is used necessarily presupposes a separationa break in the marriage relationand when there is such a separation, a break in the marital status, a reconciliation can only mean the mending of the break; a going back together; living together again as husband and wife; a resumption or renewal of the former marriage relation. The mere forgiveness on the part of the injured spouse, and the friendly relationship and association between the parties, in the absence of their coming together in the marriage status, will not be held to be a reconciliation within the meaning of the statute."
Also in the Martin case the Court said:
"* * * In Hill v. Hill, 112 La. 770, 36 South. 678, it was said that a reconciliation between spouses after facts have occurred which would give rise for an action for divorce, or for separation from bed and board, has the same effect in Louisiana as `condonation' does in the common-law states. 2 Schouler on Marriage, Divorce, Separation, and Domestic Relations (6th Ed) p. 1887, defines `condonation' as:
"`The conditional forgiveness or remission by one spouse, of some matrimonial offense of which he or she knows the other to be guilty. And the rule is that, while the condition of forgiveness remains unbroken by the former offender, condonation from whatever motive it may have proceeded remains an absolute barrier to all divorce remedies founded on that particular grievance.'
"The same author (page 1890) declares the general rule to be that any cohabitation with the guilty party after the commission of a matrimonial offense, if it be upon the injured party's knowledge, will amount to conclusive evidence that the offense in question has been conclusively forgiven. And it is further stated that condonation takes place after clear and convincing knowledge of the offense is brought home to the libelant who thereafter cohabits with the libelee. Perfect condonation should appear not only by express forgiveness, but by renewal of cohabitation. Same authority, p. 1891. A mere offer of reconciliation by the injured *697 spouse may constitute condonation, and cruelty in one may be condoned by the other party soliciting reconciliation and renewing cohabitation; but, according to the weight of authority, an unaccepted offer to resume intercourse is unavailing to the offender as amounting to condonation until the offer is accepted."
Here, the offer was accepted, apparently voluntarily.
The defendant has apparently abandoned his demand in reconvention as he only seeks reversal of the judgment of separation rendered below.
For the reasons assigned, the judgment of the Lower Court will be reversed and there will be judgment herein in favor of defendant and against petitioner dismissing petitioner's action.
Judgment reversed.