378 So.2d 984 (1979)
Joseph Alca OGEA, Plaintiff-Appellee,
v.
Barbara Ann OGEA, Defendant-Appellant,
Leary Nicole Ogea, minor, through court appointed attorney, Appellant.
No. 7201.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1979.
Rehearing Denied November 21, 1979.
Writ Refused January 28, 1980.
Reuvan N. Rougeau, Hunt, Godwin, Painter & Roddy, John S. Hood, Lake Charles, for defendant-appellant.
*985 Norman L. Williams, Lake Charles, for plaintiff-appellee.
Before CULPEPPER, DOMENGEAUX and STOKER, JJ.
DOMENGEAUX, Judge.
This case concerns itself principally with the issues of divorce, separation, and disavowal of paternity. Secondarily, there are questions of alimony, custody, and child support.
The parties are: Joseph Alca Ogea, plaintiff-appellee, (hereinafter referred to as Husband or Joseph), Barbara Ann Ogea, defendant-appellant, (hereinafter referred to as Wife or Barbara), and Leary Nicole Ogea, minor sought to be disavowed by the husband, (hereinafter referred to as Child).
Numerous pleadings have been filed, which are chronicled as follows:
(1) May 9, 1977Petition for divorce by husband, against wife, based on two years separation from June 10, 1974, (La.R.S. 9:301), and alleging that no children were born of the marriage.
(2) June 1, 1977Answer by wife, general denial, with allegation, however, that she was several months pregnant.
(3) June 10, 1977Supplemental and amending petition for divorce by husband alleging abandonment on June 10, 1974, and additionally alleging adultery by wife with a man named "Darrell", which resulted in her becoming pregnant. Husband also alleged that he paid the sum of $463.00 to an obstetrician for services to be rendered to wife in connection with the pregnancy, but that the payment was made under protest.
(4) July 13, 1977Answer and reconventional demand by wife, general denial, except to admit the amount of money paid to the obstetrician. Reconventional demand for divorce averring that husband is living in adultery with a woman named Paulette at a named address in Crowley, Louisiana, and that husband and the named woman hold themselves out to be man and wife. Wife further alleged that a reconciliation with husband took place on February 11, 1977, at a home in Lake Charles, Louisiana, at which time husband and wife engaged in sexual intercourse, following which husband abandoned wife and refused to return to live with her. Consequently, she also prayed for a legal separation. She further asked for support during the pendency of the proceedings, attorney's fees, and a partition of the community.
(5) July 21, 1977Answer by husband to wife's reconventional demand in form of general denial.[1]
(6) January 6, 1978First supplemental and amending petition of reconventional demand by wife, alleging that a child, Leary Nicole Ogea, was born on November 3, 1977, issue of the marriage between her and husband, praying for custody, child support, and attorney's fees.
(7) January 11, 1978Answer by husband to wife's first supplemental and amending petition of reconventional demand, in the form of a general denial.
(8) January 11, 1978Second supplemental and amending petition for divorce by husband, and petition for disavowal of paternity, alleging, inter alia, that: husband and wife had not lived together as man and wife since June 10, 1974; wife was guilty of adultery; a child was born, but that the child was not his; and he proposed to and did disavow the child. He prayed for a divorce and a decree by the Court to the effect that he is not the father of the child, Leary Nicole Ogea, born on November 3, 1977.
(9) January 17, 1978Motion by husband to have court order wife and child to submit *986 to physical examination involving blood grouping tests designed to show that husband could not possibly be the father of the child.
(10) January 20, 1978Answer by wife to husband's second supplemental and amending petition for divorce and disavowal of paternity.
In the above posture the case went to trial, after which judgment was rendered as follows:
(1) In favor of husband and against wife granting a divorce "a vinculo matrimonii" under the provisions of La.R.S. 9:301.
(2) Decreeing that husband "is not the father of the minor child, Leary Nicole Ogea."
(3) Rescinding the prior judgment on the rule heard on July 21, 1977, referred to in Footnote 1 herein.
(4) Assessing costs against husband, as head and master of the community of acquets and gains.
As was observed by the trial judge, there seemed to be a close relationship between everyone who testified in this case. In addition to testifying in his own behalf, Joseph called as witnesses his brother, Wallace W. Ogea, and Alma Faye Rogers. Barbara testified in her own behalf and she called as witnesses Mrs. Paulette LaRocca, Orlanda Bass, Regina Ralls (Joseph's niece who is the daughter of Wallace and Leary Ogea), Eunice Hutchins, and Mrs. Wallace (Leary) Ogea.
We find from the record that Joseph and Barbara were married on December 1, 1967, in Orange, Texas. Each had been previously married to other spouses and had children from those unions. They subsequently established a matrimonial domicile in Crowley, Acadia Parish, Louisiana. While being domiciled in Acadia Parish they became separated on June 10, 1974. They have not resumed living together as husband and wife. Joseph has continued to reside in Acadia Parish and was so residing at the time of this trial, March 7, 1978. Barbara apparently continued to reside separately in Acadia Parish for some time, and subsequently moved to Lake Charles, Calcasieu Parish, Louisiana.
Pertinent to this case is the location of four residences on and around Eliza Drive in Lake Charles, Louisiana, all of which are situated in proximity to one another. One residence belonged to Joseph's mother; another residence was Joseph's separate property; a third residence was the home of Wallace Ogea, his wife, Leary Ogea, and their daughter, Regina Ralls; and the fourth residence was owned and occupied by Eunice Hutchins. At different times from the time that Barbara was separated from Joseph she resided in Joseph's house (see Footnote 1) and also resided at the residence of Eunice Hutchins. From the time of the separation of June 10, 1974, Joseph would regularly visit his mother's home and would stay there frequently during his off days, which practice continued even after his mother died in October of 1976.
It is an uncontested fact that Joseph and Barbara saw each other rather frequently from the time of the separation, both in Crowley and Lake Charles, certainly through the last of February or March of 1977.
Barbara contends that she had sexual relations on or about February 11, 1977, with her husband Joseph, which caused her to become pregnant with the child involved in these proceedings. The child was subsequently born on November 3, 1977. She testified that the act of sexual intercourse occurred at Joseph's mother's house. Joseph admits that he saw and talked to Barbara in those surroundings at about that time but he contends that he was never alone with Barbara, and that when he spoke with her at his mother's house, the conversation always occurred outside of the house. There is some testimony that Barbara and Joseph were alone in his mother's house in January of 1977. There is also testimony by Joseph's lady friend, Mrs. Paulette LaRocca, which contradicts Joseph's testimony that Barbara never came into his mother's house while he was there. There is no testimony that an act of intercourse occurred *987 at that time, except Barbara's testimony that it did occur, and Joseph's testimony that it did not.
Barbara admitted that she had sexual relations once with one Richard Romero. As well as the Court can determine, this was on October of 1976, or before. Richard Romero, however, is not alleged by Joseph to be the father of the child. Joseph alleges that the father is a person named "Darrell". Barbara was friendly with two other men, namely, Eddie Landreneau and Darrell Hebert. However, she denies having sexual intercourse with either of them. Although there are suggestions and suspicions, there is no proof that she engaged in intercourse with either of them at any time.
Barbara strenuously contends that her husband Joseph is the father of the child. She has admitted that she probably stated to someone who asked, that Eddie Landreneau was the father. She may also have said, she testified, that Darrell was the father. However, she indicates, and this is substantiated to some extent, that this was a "joking" statement. She has stated to numerous people that her husband Joseph was the father, and the fact that she so stated, is corroborated.
Blood tests were performed on Joseph, Barbara, and the child, which resulted in the conclusion of the pathologist that "... Joseph Alca Ogea cannot be excluded as the possible parent of Leary Nicole Ogea."

THE DISAVOWAL
Act No. 430 of the Regular Session of the 1976 Legislature repealed C.C. Arts. 191 and 192, re-enacted C.C. Arts. 184 through 190, and added a new Article to the Code of Civil Procedure, viz., C.C.P. Article 5091.1.[2] The subject matter addresses itself to legitimacy of children resulting from marriage, including disavowal of paternity. Prior Article 184 provided that:
"The law considers the husband of the mother as the father of all children conceived during the marriage."
Under the jurisprudence interpreting this prior article, a child born during the lawful marriage was conclusively presumed to be an issue of the marriage, unless within a short statutory period an action was successfully brought by the father or his heirs to disavow its legitimacy on the narrowly limited grounds permitted. Succession of Mitchell, 323 So.2d 451 (La.1975), and the various authorities and cases cited therein.
C.C. Article 184 now reads:
"The husband of the mother is presumed to be the father of all children born or conceived during the marriage."
The legislative history of Act 430, although by no means extensive, indicates that the legislation was prepared and submitted by the Louisiana State Law Institute and was designed to moderate the statutory and jurisprudential rules theretofore existing in the action of disavowal. Essentially, Act 430 was intended, in part, to eliminate the conclusiveness of the presumption of paternity. However, the presumption of paternity still persists, under new Article 184.
Concerning the burden of proof in an action of disavowal, C.C. Art. 187 now reads:
"The husband can disavow paternity of a child if he proves by a preponderance of the evidence any facts which reasonably indicate that he is not the father."
We must answer this question. Did Joseph prove by a preponderance of the evidence any facts which reasonably indicated that he was not the father? The only evidence supporting Joseph's claim of nonpaternity is (1) his testimony denying that he had intercourse with his wife at the probable time of conception; and (2) testimony that Barbara had told other people that Darrell or Eddie was the father. Against Joseph's claim is the following: (1) Barbara told many people that Joseph was the father; (2) Barbara claims to have had intercourse with Joseph on February 11, *988 1977, the probable time of conception; (3) At least one other witness testified that Joseph and Barbara were together alone around that time; (4) Joseph admits having seen and been with Barbara frequently during the period when conception could have taken place; and (5) Other than suggestions and innuendoes, there is no proof that Barbara had intercourse with a male other than her husband, during a time when conception could have taken place. Based on this evidence the trial judge ruled in favor of Joseph and allowed the disavowal. He rendered oral reasons at the termination of the trial, and after reviewing the testimony, stated:
"Considering all of the testimony, the court has arrived at a conclusion, right or wrong. I recognize that the presumption of paternity is one of the strongest presumptions in our law as we know it. I feel that the burden has been met to overcome that presumption, and the Court finds that the child, Leary Nicole, I believe its name is, is not the child of Joseph Ogea."
He made further comments following his denial of a motion for a new trial which had been filed by counsel for the mother, Barbara, as follows:
"Well, I had given fairly lengthy, I guess it was lengthy, reasons from the bench when I ruled, whenever this trial was, and I mentioned in my reasons that I was familiar with the strongest presumption and those things dealing with disavowal, that in my opinion, my judgment, this was an exceptional case, and I'm aware of the, you might say, broadening of the approach that the Courts seem to be taking in cases such as this dealing with disavowal. We now permit blood tests to disprove paternity; not prove, but to disprove, as you pointed out, Mr. Rougeau, and it very well could be that the appellate courts aren't ready to accept the broadening that I have given it......... and I stand by my ruling and deny the motion."
We think the able trial judge erred. In our opinion, Joseph failed to prove such facts, as contemplated by La.C.C. Art. 187, which would entitle him to disavow the child.
In our effort to determine what the Legislature intended by re-enacting Art. 187, we feel constrained to refer to the Official Revision Comments under that Article. We recognize that the Official Revision Comments are not the law. Section 4 of Act No. 430 so states. However, reference to these Comments may be properly made as an aid in the determination of a proper interpretation of the articles of the Code. City of New Orleans v. New Orleans Canal, Inc., 173 So.2d 43 (La.App. 4th Cir. 1965), writ refused 247 La. 727, 174 So.2d 135 (1965).
The Official Revision Comments under Art. 187 read:
"Article 187 was amended to provide that evidence used in an action for disavowal of paternity may consist of any facts which reasonably indicate that the husband is not the father of the child. Examples of the type of facts which may create a preponderance of evidence in an action to disavow may include (but are not limited to) such items as blood grouping test results or any other reliable scientific test results that preclude paternity of the husband, proof of sterility of the husband at the probable time of conception, and remoteness of the husband from the wife that makes the cohabitation unlikely at the probable time of conception."
We find the examples to be instructive. It is clear by reading them that the Legislature intended to allow a husband to successfully disavow a child by proof of any of the specific examples. In this case: (a) blood tests did not exclude Joseph as the father; (b) Joseph did not make any claim of sterility; and (c) the undisputed facts show cohabitation or sexual intercourse to be possible at the time of conception, thereby ruling out any question of remoteness. Thus, none of the specific examples are applicable in this case. The list is not exclusive, however, so we must determine if the facts of this case form another example of the type of facts which may create a preponderance of evidence in favor of the husband in a disavowal action.
*989 It is a fundamental rule of interpretation[3] that the meaning of a word or phrase may be ascertained by the meanings of other words or phrases with which it is associated. Also, when general and specific words are associated with and take color from one another, the general words are restricted to a sense analogous to the less general. B.W.S. Corporation v. Evangeline Parish Police Jury, 293 So.2d 233 (La.App. 3rd Cir. 1974); Board of Trustees of E. Baton Rouge Mortgage Finance Authority v. All Taxpayers, et al., etc., 336 So.2d 306 (La.App. 1st Cir. 1976). In light of these general rules of construction, we must conclude from the language "[e]xamples of the type of facts ... include (but are not limited to) ..." that the words "but are not limited to", being the more general words, refer to other examples, the facts of which must be analogous to the examples given.
We find the examples given to be of two types: (1) reliable scientific facts or tests which preclude the paternity of the husband; and (2) circumstantial facts showing that the husband lacked the opportunity to have intercourse with his wife at the probable time of conception. Therefore, any other examples of types of facts must include either reliable scientific proof that the husband cannot be the father, or proof that the husband lacked the opportunity to have intercourse with his wife at the probable time of conception. Absent either of these types of facts the presumption of paternity will not be overcome.
In this case, as previously stated, none of the facts are of the three specified examples, nor do we find other facts presented of the type or calibre illustrated which would overcome the presumption of paternity against the husband. Testimony of the husband that he is not the father, when he had numerous opportunities to have intercourse with his wife at the approximate time of conception is not sufficient as a type of fact contemplated by the Legislature. Otherwise, the example of "remoteness" would be incongruous.
The presumption of paternity, although no longer conclusive, still persists in this state. If the Legislature had intended to allow the testimony of the husband to overcome this presumption, merely because it may have been more credible to the trial judge than the wife's contrary testimony, it could have written Article 187 and its accompanying comments to reflect that intention.[4]
An additional factor bolsters our conviction that the husband in this case failed to carry his burden of proof in disavowing the child. The Legislative history of the statute in question shows that it was first introduced as House Bill No. 418, and C.C. Art. 187 therein read as follows:
"The husband can disavow paternity of a child if he proves by a preponderance of the evidence that he is not the father."
That Article was amended to read as it now does in the final Act, and that is:
"The husband can disavow paternity of a child if he proves by a preponderance of the evidence any facts which reasonably indicate that he is not the father." (Emphasis added).
This indicates to us that the intent of the Legislature is such that a mere preponderance of the evidence by the husband would not be sufficient to disavow a child, but that his preponderance must be in connection with the type of facts illustrated in the Official Revision Comments or type of facts of the same general nature or calibre. Any other conclusion would defeat the Legislative will and would make it possible for a husband or wife or both to cause a child to *990 be disavowed at their whim and fancy. Although, under the new Act, the presumption of paternity may not be conclusive, it nevertheless remains strong and viable.
We conclude, therefore, that the husband in this case, Joseph, has failed to carry his burden of proof in order to disavow the child, Leary Nicole Ogea, and we accordingly declare that he is the legal father of the child.

THE DIVORCE
In the main demand Joseph sued Barbara for a divorce based on voluntarily living separate and apart for two years as provided by La.R.S. 9:301. Alternatively, he asked for a divorce based on his wife's alleged adulterous acts. In her reconventional demand, Barbara sued for divorce based on her husband's alleged adulterous conduct. Barbara also claims, and Joseph denies, that a reconciliation occurred on February 11, 1977. If true, this reconciliation would defeat Joseph's claim for divorce under La.R.S. 9:301.
After considering all the evidence, the trial court granted a divorce to Joseph under La.R.S. 9:301. Implicit in the trial court's judgment is the finding that there was no reconciliation between the parties. We affirm the trial court's judgment of divorce for the following reasons.
Both parties agreed that the voluntary separation occurred on June 10, 1974, when Barbara left the matrimonial domicile. From that date forward, until at least the date of the trial more than two years later, they remained separated, she living at first in Crowley and then in Lake Charles, and he living in Crowley. Testimony of other witnesses corroborates this fact, and the trial court was satisfied that the requisite separation had been proven.
Barbara claims that a reconciliation has extinguished Joseph's cause of action under 9:301. The defense of reconciliation is an affirmative defense. Defendant (in this case Barbara) must prove by a preponderance of the evidence that a reconciliation occurred in order to defeat the separation or divorce. Pace v. Pace, 144 So.2d 195 (La.App. 4th Cir. 1962). Barbara claims the reconciliation occurred when she and Joseph engaged in one act of sexual intercourse on February 11, 1977, at his mother's home in Lake Charles. At least one witness claims that the two were alone around that time after she, the witness, left them together. Joseph has denied having had intercourse with his wife during the separation period.
Traditionally, in this state, one act of intercourse between parties per se constituted a reconciliation and extinguished any known cause of action for separation or divorce which had accrued to the benefit of either spouse up to the time the reconciliation occurred. Collins v. Collins, 194 La. 446, 193 So. 702 (1940). Later jurisprudence held that a reconciliation did not occur, absent other facts tending to support a finding of a reconciliation, when coercion, force, or deceit was used to accomplish intercourse by a spouse endeavoring to establish that a reconciliation occurred. Blanchard v. Blanchard, 234 La. 790, 101 So.2d 671 (1958); Garrett v. Garrett, 324 So.2d 494 (La.App. 2nd Cir. 1975); Millon v. Millon, 352 So.2d 325 (La.App. 4th Cir. 1977). Recent cases are divided as to whether a voluntary act of sexual intercourse constitutes a reconciliation per se. Stewart v. Stewart, 175 So.2d 692 (La.App. 1st Cir. 1965) holds that it does. Halverson v. Halverson, 365 So.2d 600 (La.App. 1st Cir. 1978) holds that it does not.[5]Halverson says in pertinent part:
"In determining whether a reconciliation between spouses has resulted from *991 their actions and relationship with each other, isolated acts of voluntary sexual intercourse between them is [sic] not conclusive of intent to reconcile; it is but one of the factors to be considered in determining mutual consent and agreement to reconcile.... We hold merely that isolated instances of sexual intercourse do not per se constitute reconciliation. We hold that such actions are merely part of the totality of circumstances which must be considered in each instance to determine whether the parties mutually intended to resume the marital relationship. No such intent is shown in this instance."
The trial court did not favor us with his reasons for holding that no reconciliation took place. He may have felt, as the trial court did in Barham v. Barham, 337 So.2d 289 (La.App. 2nd Cir. 1976), that the wife did not prove by a preponderance of the evidence that intercourse took place. Since there was testimony to support either view, this finding would not have been manifestly erroneous. On the other hand, the trial court might have found that one act of voluntary intercourse did occur but that it was not conclusive proof that the parties intended to re-establish their former relationship as husband and wife, and that the evidence as a whole failed to show that the parties reconciled their differences. This conclusion would be appropriate under the rationale of the Halverson decision and would not be manifestly erroneous. For example, after the alleged act of intercourse on February 11, 1977, the parties continued to live in separate dwellings. Joseph continued to live with another woman in Crowley. No attempt was made to re-establish a single matrimonial domicile. Thus, ample evidence in the record would support a finding that a single act of voluntary intercourse, if such did occur in this case, did not constitute a reconciliation.
The trial court properly considered evidence in support of both the main and the reconventional demand. Thomason v. Thomason, 355 So.2d 908 (La.1978); Yates v. Yates, 355 So.2d 573 (La.App. 3rd Cir. 1978).[6] He then granted a divorce in favor of Joseph under La.R.S. 9:301 as prayed for in his main demand. We are unable to conclude that the trial court committed error by not granting the divorce to Barbara on the grounds of adultery. The trial court found fault on both sides and felt unable to grant either party a divorce based on the fault of the other, apparently because of the doctrine of recrimination.[7] However, recrimination is not a defense to, and will not defeat, a suit for divorce based on La. R.S. 9:301. Thus, no law precluded the trial court from granting the 9:301 divorce.

FAULT AND ALIMONY
In a suit for divorce based on La. R.S. 9:301 fault is not at issue. Fault becomes an issue only when one of the spouses claims permanent alimony under La.C.C. Art. 160. Williams v. Williams, 215 La. 839, 41 So.2d 736 (1949). The cases disposing of the issue hold that the party seeking alimony (usually the wife) has the burden of proving that he or she is free of fault. Broussard v. Broussard, 320 So.2d 279 (La. App. 4th Cir. 1975); Palama v. Palama, 323 So.2d 823 (La.App. 4th Cir. 1975), writ denied 326 So.2d 381 (La.1976); Chapman v. Chapman, 130 So.2d 811 (La.App. 3rd Cir. 1961).
The trial court found that Barbara did not overcome her burden of proving that she was free of fault. She stated in her testimony that she might have been at fault when she abandoned the matrimonial domicile in 1974. She also admitted in her testimony to having had intercourse once in October, 1976, or before, with another man, while separated from her husband. Counsel *992 argues that an admission of adultery is insufficient to prove guilt of adultery. Counsel is correct in this respect: An admission of adultery, without other evidence, is insufficient proof upon which to dissolve the bonds of matrimony. Harman v. McLeland, 16 La. 26 (1840); Mack v. Handy, 39 La.Ann. 491, 2 So. 181 (1887); Arbour v. Murray, 222 La. 684, 63 So.2d 425 (1953). This evidence, standing alone, is deemed untrustworthy because of the possibility that spouses may prove adultery by confession, thereby being granted an immediate divorce. No cases are offered, and we can find none, which hold that a confession is untrustworthy when being used to establish fault or freedom from fault. When the husband can judicially admit that his wife is free of fault, Labadot v. Labadot, 328 So.2d 747 (La.App. 4th Cir. 1976), we see no reason why the wife cannot likewise admit her own fault. Therefore, we affirm the trial court's judgment that Barbara did not prove her freedom from fault. Thus, she is not entitled to permanent alimony.

CUSTODY, CHILD SUPPORT, AND ATTORNEY'S FEES
The permanent care, custody, and control of the minor child, Leary Nicole Ogea, will be awarded to the mother, Barbara Ann Ogea. The record is devoid of any facts concerning the needs of the child and the ability of the father to pay, and the case therefore must be remanded to the District Court for a determination of the question of child support and any attorney's fees for Barbara which may be due under the evidence to be adduced.
The attorney appointed to represent the minor child in these proceedings has filed a motion in this Court requesting attorney's fees. His motion is well taken. The record indicates that no fee was fixed by the trial court, hence we will remand for the additional purpose of permitting the trial judge to fix that fee. Dugas v. Henson, 307 So.2d 650 (La.App. 3rd Cir. 1975), writ denied 310 So.2d 851 (La.1975).

DECREE
For the above and foregoing reasons the judgment of the District Court is affirmed insofar as it grants a divorce in favor of the husband and against the wife under La.R.S. 9:301, denies permanent alimony to the wife, and assesses costs against the husband as head and master of the community of acquets and gains. It is reversed insofar as it decrees that the husband is not the father of the minor child, Leary Nicole Ogea, and insofar as it fails to grant the custody to the mother or to consider the question of child support.
Accordingly, it is hereby Ordered and Decreed that Joseph Alca Ogea is the legal father of the child, Leary Nicole Ogea. It is further Ordered that the permanent care, custody, and control of the child be awarded to the mother, Barbara Ann Ogea, and that the case be remanded to the District Court for a determination of: The amount of child support to be paid by Joseph Alca Ogea, the question of attorney's fees for Barbara, if any, and for the fixing of attorney's fees due the attorney appointed to represent the child.
Costs on appeal are assessed against the husband, Joseph Alca Ogea, as head and master of the community of acquets and gains.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] On July 21, 1977, a rule was heard in open Court by stipulation, and judgment was rendered allowing wife to live in husband's home (his separate property) during the pendency of the proceedings. Husband also ordered to carry and maintain hospitalization insurance for wife during the pendency of the proceedings, including the period of pregnancy, all of which was done without prejudice to husband as to future rights, and without the admission of paternity. Further, alimony pendente lite was awarded to wife in the amount of $150.00 per month.
[2] C.C.P. Article 5091.1 merely provides for the appointment of an attorney in disavowal actions, who is not to represent any other party in the litigation.
[3] We feel that the rules on statutory interpretation are also applicable to the interpretation of Official Revision Comments when the Comments are used to aid the Court in determining the proper legislative intent.
[4] We note that the Wisconsin Legislature clearly expressed its intention to allow the husband or wife to testify concerning who the biological father is or is not by making either spouse competent witnesses to the fact of paternity in a disavowal action. Wis.Stat.Ann. § 891.39(1)(a) (West 1966), enacted by 1945 Wis. Laws ch. 38.
[5] Halverson cites Stewart as holding that a single act of sexual intercourse may constitute reconciliation of spouses. This is true when that act is accomplished by coercion, fraud, or deceit, in which case a consideration of all the other circumstances is proper. But Stewart says, 175 So.2d at 696, "The act of intercourse is the extreme fulfillment of the marital relationship. The voluntary performance of this action ... could serve no purpose other than to condone the prior acts of cruelty on the part of the defendant." (Emphasis added). Thus, according to our reading of Stewart, a voluntary act of intercourse will constitute a reconciliation.
[6] Thomason apparently overrules Lee v. Lee, 343 So.2d 428 (La.App. 3rd Cir. 1977), which held that a defendant spouse's reconventional demand for divorce on the ground of adultery stated no cause of action when the plaintiff spouse proves his main demand for divorce based on La.R.S. 9:301.
[7] Since the facts of this case arose, the doctrines of recrimination and comparative rectitude have been abrogated. Thomason v. Thomason, supra.