KLIEBERT, Judge.
In this disavowal of paternity suit, the child, Lashawnda Marie Mock, through the court-appointed curator ad hoc, appeals from the judgment of the trial court decreeing that plaintiff, William Mock, is not the father of the minor child.
William C. Mock, plaintiff-appellee (hereafter Mock), and Anna Washington Mock, defendant-appellant (hereafter Anna), were married on October 25, 1969, ceased living together in 1974 (but were never legally separated), and have not lived together as man and wife since 1974. On May 12,1978, Anna Washington Mock gave birth to La-shawnda Marie Mock. On July 7, 1978, William Mock filed a petition to disavow paternity. He contends he is not the father of the child and that one Joe Stirgus is the father of the child. A curator ad hoc was appointed to represent the interests of La-shawnda Marie Mock. After trial on the merits, the trial court rendered judgment “in favor of plaintiff, William Mock, decreeing the minor child, Lashawnda Marie Mock, is not plaintiff’s child.” Lashawnda Marie Mock, through her curator ad hoc, appeals.
Appellant’s various assignments of error can be synthesized into one argument: William Mock, as the legal husband of the wife, has failed to overcome the presumption he is the father of Lashawnda Marie Mock.
In 1976 the legislature repealed Civil Code Articles 191 and 192 and re-enacted Civil Code Articles 184 through 190.[1] According to the legislative history for this legislation, it appears the legislation was enacted to do away with the former conclusiveness of the presumption of paternity for a child born during the existence of the marriage and to moderate the statutory and jurisprudential rules controlling actions for disavowal. For this former presumption, see Succession of Mitchell, 323 So.2d 451 (La.1975).
Article 184 of the Civil Code as re-enacted in 1976 provides as follows:
“The husband of the mother is presumed to be the father of all children born or conceived during the marriage.”
But Article 186 as re-enacted provides:
“The husband of the mother is not presumed to be the father of the child if another man is presumed to be the father.”
And, Article 187 as re-enacted provides:
“The husband can disavow paternity of a child if he proves by a preponderance of the evidence any facts which reasonably indicate that he is not the father.”
The Official Revision Comments provide that Article 187 was re-enacted to provide that evidence used in an action for disavowal of paternity may consist of any facts which reasonably indicate the husband is not the father of the child. It then goes on to state that examples of the type of facts which may create a preponderance of evidence in an action to disavow may include (but are not limited to) scientific tests such as blood grouping or other reliable tests which precludes paternity of the husband or proves sterility of the husband or facts which show the remoteness of the husband from the wife that make the cohabitation unlikely at the probable time of conception.
While considering the Official Revision Comments, in Ogea v. Ogea, 378 So.2d 984 *250 (La.App. 3rd Cir. 1979), the Third Circuit categorizes these examples as follows:
“We find the examples given to be of two types: (1) reliable scientific facts or tests which preclude the paternity of the husband; and (2) circumstantial facts showing that the husband lacked the opportunity to have intercourse with his wife at the probable time of conception. Therefore, any other examples or types of facts must include either reliable scientific proof that the husband cannot be the father, or proof that the husband lacked the opportunity to have intercourse with his wife at the probable time of conception. Absent either of these types of facts the presumption of paternity will not be overcome.”
and made the following observations relative to the particular facts of the case:
“In this case, as previously stated, none of the facts are of the three specified examples, nor do we find other facts presented of the type or calif re illustrated which would overcome the presumption of paternity against the husband. Testimony of the husband that he is not the father, when he had numerous opportunities to have intercourse with his wife at the approximate time of conception is not sufficient as a type of fact contemplated by the Legislature. Otherwise, the example of ‘remoteness’ would be incongruous.”
Unlike the Ogea case, the trial court here upheld the action of disavowal. The facts upon which the court concluded the husband was not the father of the child are as follows:
William Mock testified to living in New Orleans since the date of separation; first with his mother, and later with another woman. Mock denied ever dating his wife or visiting her since 1974, but he did admit to visiting her mother, stating that Anna was present during the visit. He related seeing his wife with another man in a public lounge on two occasions.
Samuel Mock, plaintiff’s brother, testified to seeing plaintiff about every day, and to the best of his knowledge, William and Anna Mock had not lived together since 1974. He denied ever seeing them together since the separation. However, he recalled seeing Anna Mock with Joe Stirgus at Club Bolivar, a barroom, and claimed he congratulated Joe Sturgis and was offered a cigar by Joe Sturgis when the baby was born. Samuel Mock further recalled seeing Anna pregnant, but he couldn’t remember the exact time or year, stating that his memory for dates was bad.
Kermit Baraford testified that to the best of his knowledge plaintiff and Mrs. Mock had not seen each other since separating in 1974.
Anna Mock, the mother, testified she and William C. Mock had stopped living under the same roof in 1974. She had been living with her parents since then. However, Mrs. Mock claimed to have cohabited with her husband two or three times at her house in 1976 and 1977. Initially, she stated that she had relations with Mr. Mock in August, 1977, and since he was the only man she had relations with at that time, he was the father of her child. Under cross-examination, she stated seeing Mr. Mock on “many occasions”, but corrected herself and finally settled on “twice”. Further, she stated that she had relations with her husband on her birthday on September 30,1977, instead of the August date she had stated under direct examination. Mrs. Mock admitted not trying to contact Mr. Mock or his family to discuss the pregnancy, and claimed to have only seen Joe Sturgis a couple of months, but didn’t enumerate what months. When pressed, she admitted seeing Joe Sturgis on a regular basis from approximately 1976 until she last saw him around Christmas, 1979. When questioned by the Court, she related seeing Mr. Mock another time after the birth, which was when Mr. Mock came to see the baby when the baby was either three weeks or three months of age. When re-examined, she stated only seeing the plaintiff twice since 1974.
Johnnie Richard, Anna Mock’s sister, lives with Anna at their mother’s house. She testified to having answered the door in 1976 when Mr. Mock came to visit Anna, to *251 Mr. Mock taking Anna out, and, upon their return, to having spent the night. In 1977, she recalled having admitted Mr. Mock to the house on her sister’s birthday, but did not know of her own knowledge if Anna and William slept together.[2] Further, the witness recalled William Mock’s having visited the baby sometime in 1978, but could not remember when specifically. Mrs. Richard knows Joe Sturgis, and recalled Anna having dated him around 1978, but she couldn’t remember Anna’s having seen Sturgis in 1976 or 1977.
The question presented is — did Mock prove by a preponderance of the evidence any facts which reasonably indicated that he was not the father? The trial court, in its oral reasons for judgment, noted that this was “a credibility question of believing one side of the witness against the other.” Noting that he was more impressed with the husband and his witnesses than the wife and her witness, the court entered the judgment for plaintiff. Under the jurisprudential rule for appellate review formulated by the Supreme Court, we can only change the finding of fact made by the trier of the facts when the findings are clearly wrong. Canter v. Koehring Company, 283 So.2d 716 (La.1973). Given the record before us, we believe there was evidence before the trier of the fact which upon his reasonable evaluation of credibility furnishes a reasonable factual basis for the trial court ruling. Were we the original trier of the fact or the ultimate reviewing authority, we might conclude otherwise, but as an intermediate appellate court operating under the jurisprudential guideline of the superior court, we cannot conclude the trial court erred in its ruling.
William Mock denied any involvement with his wife since 1974. His brother relayed how the alleged natural father offered him a cigar after the baby’s birth. Anna Mock had numerous conflicts in her testimony which in the trial court’s opinion rendered her testimony unworthy of belief; (e. g., how many times she saw plaintiff since 1974, when she saw him in 1977 [August or September?] and when she was dating Joe Sturgis.) Furthermore, she was unable to corroborate that she and Mock had relations in 1977. (Her sister’s testimony was based on hearsay information.)
Given the foregoing, and the principle that credibility of witnesses is a matter to be determined solely by the trier of facts, and since we cannot say the trial court’s ruling is “clearly wrong”, the trial court’s judgment is affirmed.
AFFIRMED.

. At the same time Code of Civil Procedure Article 5091.1 was enacted. This article provides for the appointment of an attorney to represent the child in a disavowal action. The attorney so appointed cannot represent any other party in the litigation.

. She testified that her daughter had peeped through the door and saw William in bed with Anna. This daughter was not produced as a witness.