MARVIN, Judge.
The court-appointed curator appeals a judgment disavowing an infant child who was born about 12 months after the presumptive parents allegedly last lived together as husband and wife and before the marriage was dissolved by divorce in the same action.
The curator contends that the evidence presented is not sufficient to overcome the presumption of paternity. We agree and reverse. CC 184-190, as amended by Act 430 of 1976. Ogea v. Ogea, 378 So.2d 984 (La.App.3d Cir. 1979), writ refused.[1]
*1329 A husband, presumptively the father of a child born to his wife during the marriage, may disavow that child if he proves by a preponderance of the evidence any facts which reasonably indicate that he is not the father. CC 184, 187. The preponderance must be found from the type of facts either illustrated or of the same general nature or caliber as those illustrated in the official revision comments to the 1976 amendment to CC 187. This comment states in part:
“Examples of the type of facts . . . may include (but are not limited to) such items as blood grouping test results or other reliable scientific test results that preclude paternity ..., proof of sterility of the husband at the probable time of conception, and remoteness of the husband from the wife that makes the cohabitation unlikely at the probable time of conception.”
One case note has observed that in the initial interpretation of the 1976 amendment of the disavowal articles, the courts have recognized that the amendments are designed to strike a better balance between the policy favoring a finding of legitimacy and the need to prevent a husband from being unjustly burdened with paternity. 40 La.L.R. at p. 1028.
This record contains no evidence of scientific tests or of the husband’s sterility. Our issue then is the legal sufficiency of the evidence of remoteness of the husband from the wife that would make cohabitation unlikely at the probable time of conception.
While this determination, sometimes involving credibility, is best made by the trial court, the appellate court is constitutionally obligated to review facts to determine whether the total evidence, viewed most favorably to the trial court result, is legally sufficient to overcome the presumption of paternity that remains strong and viable, although rebuttable and which is the legal solution to the problem of proving biological fatherhood. Ogea, supra, at p. 989, 40 La.L.R. at p. 1026.
This marriage occurred in 1970 and produced two older children, one born in 1970, and the other in 1977. The litigants have always resided in Monroe. On December 2, 1980, the husband instituted this action for divorce and to disavow the child, alleging that he and his wife had not lived together since June 1979 and that the child, born June 19, 1980, “cannot be [his] child.”
This record contains only 13 pages of testimony of three witnesses: Mr. Hall, his mother, Ms. Claudell Hall, and Hall’s casual male friend, Boose. The wife did not appear or answer and the judgment of divorce was by default. Hall testified that he had not lived with and had not had intercourse with his wife since she moved from the family home to her mother’s home in June 1979. Hall said he “understood” there was another man, Freddie Cyrus, “involved” with his wife.
Hall’s mother, Ms. Claudell Hall, said that her son came to live with her about a year later, in June 1980, and that at visitation times she went to the home of her daughter-in-law in Monroe to pick up and return the older children because her son wanted nothing to do with his estranged wife. Ms. Hall said that her son had not lived with his wife since June 1979 and that on one occasion she saw a man at the house of her daughter-in-law.
Boose said he had known Robert Hall for about two years and that he knew Hall’s wife “on sight”. Robert Hall brought his children to visit the Boose children on at least two occasions and had briefly conversed with Boose in passing on the street on weekends. Boose works different hours and at a different place from Hall. Boose had visited Hall after Hall’s wife moved away and before Hall moved to his mother’s home. Boose testified that to his knowledge, Hall had not reconciled with his wife since she moved away. Hall’s mother, who works nights while Hall works days, also testified that to her knowledge, Hall had not reconciled with his wife. Both Boose and Ms. Hall admitted that they did not know what Hall did outside their presence and that their testimony was based on the belief that Hall would have told them of any reconciliation.
*1330 The fact that Hall’s wife did not appear or testify does not affect Hall’s burden of proof in the disavowal action which is against the child. Boudreaux v. Matt, 370 So.2d 139 (La.App. 3d Cir. 1979); 40 La.L.R. 798. Hall testified that he had seen his wife in the presence of Freddie Cyrus but does not say when or where. Hall’s mother indicates that Hall came to “the home” to visit his older children before he moved in with his mother. We deduce that the trial judge interpreted this as referring to Hall’s mother’s home.
Remoteness between the husband and wife, as affects the presumption of paternity and before the disavowal articles were amended in 1976, was initially required to be of such a degree in distance that cohabitation was physically impossible. See former CC Art. 189, repealed by Act 430 of 1976, Succession of Saloy, 44 La.Ann. 433, 10 So. 872 (1892), LeJeune v. LeJeune, 184 La. 837, 167 So. 747 (1936). In more recent years, the factors of time, distance, and the degree of estrangement of the marital partners determine remoteness. See Gillies v. Gillies, 144 So.2d 893, 896 (La.App. 4th Cir. 1962). Compare Dugas v. Henson, 307 So.2d 650 (La.App. 3d Cir. 1975).
Here the husband and wife were not estranged to such a degree that the wife did not voluntarily allow visitation privileges to the husband before the action was filed. Here the husband offered no testimony about the estranged wife’s attitude toward him, the proximity of the place or places she was living to the places he was living, the term of the wife’s pregnancy, how the child’s birth was registered, the time and degree of the wife’s “involvement”, as the husband “understood” it, with another man, or the circumstances under which either or both he and she lived after she left the marital domicile, and the approximate date in June 1979 that the wife left. At best, the husband has shown that his wife left, he said initially, in July, and later said, in June; that he has not reconciled or had intercourse with her since that time, although they live in reasonable proximity to each other; that he “understands” that she is “involved” with another man; and that he is privileged to see his older children who live with her.
Because of the lack of evidence, from which we or the trial judge might weigh the time and distance factors and the degree of estrangement and determine that reasonable opportunity for intercourse did not exist, we must respectfully overrule the trial court and find that the evidence here presented is not legally sufficient to sustain the husband’s burden of proving the fact of remoteness by a preponderance. The remoteness under CC 187 must be deduced or found from facts in evidence which makes the cohabitation of the husband and wife unlikely at the probable time of conception.
“Testimony of the husband that he is not the father, when he has had numerous opportunities to have intercourse with his wife ... is not sufficient as a type of fact contemplated by the Legislature. Otherwise, the example of ‘remoteness’ would be incongruous. * * * Any other conclusion would defeat the Legislative will and make it possible for a husband or wife or both to cause a child to be disavowed at their whim of fancy. Although under the new Act, the presumption of paternity may not be conclusive, it nevertheless remains strong and viable.” Ogea, 378 So.2d at p. 989-990, writ refused.
Judgment is reversed and it is hereby ordered that the demands of Robert Dale Hall disavowing the child born to his wife, Janice Thompson Hall, on June 19,1980, are rejected at his cost.
REVERSED AND RENDERED.

. See and compare 40 La.L.R. 550 (1980); 37 La.L.R. 95 (1976); 41 La.L.R. 381 (1981); Pounds v. Schori, 377 So.2d 1195 (La.1979); Circello v. Circello, 369 So.2d 722 (La.App. 1st Cir. 1979); Mock v. Mock, 400 So.2d 248 (La.App. 4th Cir. 1981).