Statement of the Case.
NIOHOLLS, J.
The present action, brought by a wife praying for a judgment of separation from bed and board, accompanied by an application for an injunction prohibiting her husband from disposing of any of the immovables of the community and an application for alimony, was filed October 24, 1902.
The petition contains the allegations in her own favor which are usual in such cases, and charges in general terms excessive cruel treatment of herself by her husband to such an extent as to make their further living together insupportable.
The injunction asked for was granted. Defendant excepted that the petition was vague, indefinite, and uncertain, and prayed that plaintiff be ordered to amend, and set out the particular acts complained of.
*771 Thereupon plaintiff amended her petition, setting out her grievances in detail, with dates, the first date being May, 1882, the last in October, 1902.
Defendant answered, pleading, first, the general issues. Further answering, he averred that, if any of the charges set forth in the petition of acts occurring prior to May 3, 1901, ever had any existence — which he denied — the same were condoned on that date and previously; that on that date and previously the plaintiff and himself cohabited as man and wife.
That as to the other charges of date subsequent to May 3, 1901, he denied each and every one. especially those set out as having occurred since the bringing of the suit; and for each and every charge preferred of date subsequently to May 3, 1901, he excepted that same as set forth in plaintiff’s petition constituted no cause of action.
The district court rendered judgment in favor of the plaintiff against the defendant decreeing a separation from bed and board and of property between them, and perpetuating the injunction which had issued.
Defendant appealed.
Opinion.
The plaintiff and the defendant were married in 1882. They are childless. They have lived most of the time at hotels and boarding houses. This case was tried before the district judge, and not by jury. All the testimony adduced, with the objections taken thereto and the bills of exception reserved, are before us, so that we are in position to pass upon the legal rights of the parties on such evidence as was, and to the extent it was, in fact legally admissible.
While we append to this opinion for reference a resumé of the evidence, we see no good reason for embodying it in it, and limit ourselves to so much of it as we think of any special importance.
Defendant says that, even if any action of his should have given rise to an action by his wife against him for a separation from bed and board, the cause of action was forfeited by condonation on her part. Counsel gives to the word “reconciliation,” found, in our Code, a meaning and scope different from that of the word “condonation” as used in the common law, but he cites no authority in support of that proposition.
Article 153 of the Civil Code negatives the-correctness of the position contended for, and fixes the precise effect to be given to any reconciliation had before a judgment. Plaintiff objected to the defendant’s introducing in evidence, for the purpose of showing a reconciliation, any letters which she had written her husband before the final separation, but the court allowed them for that purpose. Defendant maintains the correctness of the court’s ruling; citing Ashton v. Grucker, 48 La. Ann. 1200, 20 South. 738.
The letter of the husband to the wife received in the Ashton Case contained nothing which could possibly reflect upon any action of the husband, or estop him from suing his wife by reason of any wrongdoing on his. part. It was used solely for the purpose of permitting the wife to- avail herself of an admission made by the husband himself that the wife was not chargeable with the acts he complained of. There is no necessity for making use of the wife’s letters even for that purpose in this case, as it is shown by an abundance of evidence independently of any letters that, while numerous bitter quarrels evidently took place between the parties, they were not followed by a separation, but they continued to live together thereafter-harmoniously (apparently, if not actually) up to the time of final separation.
Out of the long list of acts of which the-plaintiff complains we select only those-which are at all sustained by testimony. The defendant undoubtedly on the 15th of January, 1895, struck his wife at their home in the presence of persons then visiting them,. *773 and used very harsh, language to her, without (so far as the records show) any provocation on her part. In consequence of this conduct she left the house, and went to that of the visitors, where she remained several days. On her husband’s going to her, she consented to return and did return to her home.
In October, 1899, a disturbance took place in room No. 156 in the Marlborough Hotel, New York, then occupied by the defendant and his wife. Madden — a detective in the hotel — testified that he was called from the desk in the office, and told to visit that room; that he did so, and found Mrs. Hill in a very nervous condition. Mr. Hill was in the room when he entered. Mrs. Hill requested him to remove her husband from the room, as she was afraid to remain in the room with him. She was quite excited and nervous, and seemed to be in great fear of bodily harm at Mr. Hill’s hands. Witness then requested Mr. Hill to leave, or hire another room. After considerable argument by Mr. Hill, he finally succeeded in getting him out of the room. Witness was not sure whether he left the hotel or not. He was under the impression he did.
Jackman, the night clerk at that hotel, testified' that many complaints were received at the hotel in regard to that room. Witness did not send any one to that room or make any report in regard to the same. After Mr. and Mrs. Hill had been at the hotel a few days, complaints had been received at the office regarding noises or loud voices and general disturbance emanating from their room, and Mr. Crawford, the day clerk, cautioned him (witness) to be on his guard, and, if anything happened during the night, to quell it at once.
Witness was informed by Mr. Madden (the hotel detective) that he (Madden) had expelled Mr. Hill because of a disturbance in the aforesaid room while occupying it with Mrs. Hill. In January, 1900, Mr. and Mrs. Hill occupied a room in the St. Charles Hotel. Morrison — a detective in the hotel — testified that when he was passing their room they had a quarrel together, and consequently were making too much noise; that he rapped at the door, and said distinctly, “Mr. Hill, you will have to break that up, because you will harm the house.” The guests came out two and three and asked witness what the matter was. Of course, witness heard it, and they appealed to him for everything, and he said, “Nothing more than a fuss with a lady and a gentleman.” 1-Ie did not mention names. He went away a little bit, to see if the quarrel would be renewed, but everything was perfectly quiet.
Blakely, the proprietor of the hotel, testified : That Morrison was a night watchman at the hotel, and it was his duty to report any disturbance in the hotel either to him directly or indirectly through the hotel clerks. That he knew of the occurrence in the room of Mr. and Mrs. Hill. He had heard of it. That he knew after the occurrence in the room of Mr. and Mrs. Hill had been reported to him. That she was confined to her room, and did not come out of it, nor go to the dining room, for a number of days. He did not know the facts further than the rumor. She was frequently reported sick; quite often, he understood. Her meals were sent to her room, and paid for by Mr. Hill. Mrs. I-Iill’s servant, Amelia Robinson, testified that Mrs. Hill sent for her one Sunday evening about three years before the date she was testifying (which was February 10, 1903) to go to her at the St. Charles Hotel; that she went there; that on witness reaching the door Sirs. Hill flew to the bed, and covered her face with a handkerchief; that she had a very black eye; that she nursed her every day for a week; that during that time she only saw Mr. I-Iill once. I-Ie went into the room, got his cuffs, and left the room without speaking to his wife, who was then confined to her bed.
Mrs. Hill went several times to Europe, *775 and while there employed a maid, who is referred to in the testimony as “Fraulein.” The two returned to New York in October, 1902, taking a room — No. 275 — at the Herald Square Hotel.
“Eraulein” testified that Mrs. Hill only had money enough to pay her ticket on the ship. She had not another cent. Witness had herself to pay the incidental expense on the boat. She and Mrs. Hill went to the Herald Square Hotel. Mr. Hill did not meet them at the time, but went up to the room afterwards. He knocked at the door, and witness opened it. He did not go in, and Mrs. Hill said, “Alvin, come in,” and he said, “Did you dare bring that woman here against my wishes?” She said: “I was sick. I had to bring her home.” And he said, “I’ll have nothing to do with you.” She said, “I’ll put the case in the hands of a lawyer.” And he said, “Go ahead; do as you please,” and left the room. And in a few minutes he stepped up (came up), and put his hand on her forehead, and bent her head back, and said: “I’ll have nothing more to do with you. You are nothing more than this woman is to me. You are no more my wife than this woman is to me.” Being asked, “Was it violent?” she answered, “Well, he only stepped up and put his hand violently on her forehead.” That a few minutes after a detective came up, and brought a bill, and demanded payment. 'He said she would either have to pay the bill or leave the hotel. That, Mrs. 1-Iill having no money, witness paid the bill with her own money. The detective said'he had a letter which Mr. Hill left at the office. Mrs. Hill asked him to leave the letter, but he declined to do so. Witness read the letter. It read as follows: “To the Proprietor of the Herald Square Hotel: I will not be responsible for any debts or contracts made by a lady styling herself Mrs. A. M. Hill or Mrs. Lilian Hill.” Witness was afraid Mr. 1-Iill would do something to her when he came up the second time. Mrs. 1-Iill asked the detective to protect her, and he put a bell at a certain distance, and said, if Mr. Hill came, to knock on that bell, and he would come up. “Q. The indicator? A. Yes, sir.”
On cross-examination, the witness being asked whether Mr. Hill had not said, “You are no more a wife to me than this woman,” and whether she believed from the remark made that Mr. and Mrs. Hill were not married, answered that Mr. Hill said, “You are no more my wife than this woman is,” and pointed to witness; that the remark did not create in her mind the impression that the parties were not married. She was so excited that she did not believe anything. She -could' not make out 'what it was. On the same evening (a Saturday) Mrs. Hill went to consult a lawyer, witness attending her; and she and Mrs. Hill left for New Orleans on the next Monday.
The plaintiff introduced a number of letters which Mr. 1-Iill had written her while she was in Europe the last time, and shortly preceding her return to the United States, claiming that they were abusive and insulting to a degree which was insupportable.
Defendant objected to the admitting of the letters in evidence on the ground that they were privileged communications, and letters between spouses could not be made use of in divorce suits or suits for separation from bed and board as weapons of attack.
Plaintiff maintains that a husband, through letters to his wife, may as much as by acts done by him be guilty of such outrages to the wife as to make their living together insupportable, and that the wife has the legal right to predicate a right of action for a separation directly upon and use one or moré of these letters and the contents thereof, and making them the basis of the suit. The court seems to have taken that view, and admitted the letters. The direct and immediate cause of the separation of the parties were the occurrences which took place at the Herald Square Hotel, and incidentally *777 the letters received by her from her husband just before she left Europe, coupled with the antecedent grounds of complaint which she had had before against her husband. We are not inclined to think that the letters of themselves would have ever been assigned as substantive causes for complaint, nor do we think that, standing alone, they would have been sufficient cause for a judicial separation, however offensive they might have been, or how much ground they furnished for resentment and indignation. We leave these letters out in the consideration of this case.
The occurrences at the St. Charles Hotel are not fully proven — that is, no one saw the husband strike the wife; but, connecting with Morrison’s testimony that of Blakely and of Amelia Robinson, we think a judicial conclusion can fairly be reached that the defendant struck and ill-treated her on that occasion. Repeated and stormy troubles unquestionably took place. between the spouses during their married life behind closed doors. The defendant, under a general denial, puts the plaintiff upon proof of what occasioned the troubles, and what took place when they did occur; but defendant does not allege — much less attempt to establish — any provocation or wrongdoing on her part at any time, while he himself has been shown on several occasions to have struck her. While continuance of bad conduct does not necessarily extend over from one quarrel to another following it, yet where ill treatment by one party has been shown on one or more occasions, and no complaint of any kind at any time has been made against the other party, and condonation alone is pleaded, we think that but slight evidence is needed to place at the proper door the blame for the troubles shown to have taken place. Pri- or bad conduct of the husband comes in aid of the protection of the wife. What the husband did on one or more occasions it is not strained presumption to hold he would do and he did do on others. The witness “Eraulein” testifies to the fact that the husband placed his hands upon his wife’s forehead at the Herald Square Hotel. The strained relations existing between the parties at that time go far to show that they were not placed upon her in gentleness and kindness, but that this was done, as the witness Eraulein testified it was, in anger and with violence.
We leave out of view the letter claimed to have been written by the defendant to the proprietor of the hotel, as, even if admissible, it was not shown to have been written by him. We think it has been shown beyond contradiction that a hotel bill was presented to the plaintiff for the board of herself and maid just after defendant left their room, and that he was willing to leave her alone without money In a city distant from her home.
It is true that she was able to procure and did procure money from friends, but of this he does not seem to have been then advised.
The testimony given byMadden in regard to the occurrences at the Marlborough Hotel may be considered as rem ipsam, and part of res gestse, and as establishing the existence of the facts themselves which were sworn to as having then taken place and been then said. Whether the things said were true or not is a different question. Conclusions as to their truth was a matter well to be drawn from the whole evidence adduced on the trial, if not per se.
We do not think that the question as to whether the commission sent to Heydt, notary, to take testimony in New York, was properly executed, is before us. A rule to show cause why the testimony taken under the commission should not be used on .the trial of the cause was, after hearing, determined in favor of the introduction of the testimony in so far as questions of form were concerned, and no bill of exception was reserved. Had any such been taken, a new *779 commission would doubtless have been forwarded. This court is very reluctant to separate husbands and wives, but a consideration of the testimony in this case satisfies us it would be subjecting the plaintiff to an insupportable condition of things to leave her in her present situation. We think the judgment appealed from is correct, and it is hereby affirmed.