THOMPSON, J.
The plaintiff and defendant were married on February 10, 1907, in Mobile, Ala., and shortly thereafter came to Louisiana to live. In February, 1917, they established their matrimonial domicile at Hammond, this state. There were five children born of the marriage. In the latter part of May, 1920, the plaintiff left her husband, taking her children with her, and went to the home of her parents in Pascagoula, Miss. The cause of separation was due, as alleged by plaintiff, to cruel treatment on the part of the husband, of such a nature as to render their living together intolerable. On the promise of the husband “to behave himself and treat plaintiff right” she returned to live with him in July, 1920. It is alleged that, instead of complying with his promise, the defendant continued his ill treatment, and she was again compelled to leave her husband in January, 1921, and returned to the home of her parents. Some of the acts of ill treatment charged against the husband in the petition for separation from ■bed and board, are: That after plaintiff’s return ' to her husband, he accused her of infidelity, cursed her, calling her a damned lie, and in his rage of anger tore petitioner’s waist from her; that during the latter part of- May, 1920, while petitioner’s mother was visiting her, petitioner’s husband again became enraged, and, demanding from her a gun and shells, so insulted and frightened petitioner’s mother that she was compelled to spend the night at the home of a neighbor. The district judge assigned the residence of plaintiff’s parents in Mississippi as a domicile for the plaintiff and her children during the pendency of the suit. On a rule taken by the plaintiff she was allowed alimony at the rate of $90 per month during the pendency of the suit, provided that the plaintiff established a domicile in this state. On plaintiff’s return to the state her husband turned over to her the house and furnishings which he had rented, and which had been their common dwelling prior to the separation, and the plaintiff and her children resumed their residence therein. The defendant secured board and lodging at another place. The order of court permitted the defendant to visit his children at his former home at any time between the hours of 3 o’clock p. m. and sundown.
The answer of defendant denies the ill treatment charged against him by his wife, and alleged that he has at all times discharged the duties incumbent upon him as the husband of the plaintiff and father of the children. It is alleged that his wife has ignored the rights of defendant as father of the children and head of the community, and has deliberately provoked defendant with a view of causing him to use violence towards her, to the end that she might use the same as evidence in an effort to secure from him a separation from bed and board, and ultimately the custody of their children, the latter being the main purpose of the suit; that his wife is possessed of a violent temper, which she makes no effort to control but on the contrary has repeatedly become enraged at defendant and abused him in the presence of their children and others; that the differences between plaintiff and defendant are *533 petty and trifling, resulting mainly from the persistent attitude of plaintiff in refusing to allow their children to attend the church of their' father’s choice and insisting on taking them to a church which she knew he did not approve of; that plaintiff has on various occasions encouraged their children to disobey him.
On the day the case was to be tried on the merits the defendant filed a motion to dismiss the suit, on the ground that a reconciliation had been effected between him and his wife since the filing of the suit. This motion was tried, resulting in a judgment dismissing the suit for separation from bed and board- The judgment directed that the plaintiff should deliver the children to the defendant at his boarding place on Tuesday and Thursday of each week at 3:30 p. m., and that defendant should have the custody and control of the children between the hours of 3:30 and 5:30 p. m. on the two days named. The plaintiff has appealed.
Opinion.
The question presented is whether the attitude of the plaintiff towards the defendant and her relations with him since she returned to the common dwelling constitutes a reconciliation, which would bar the prosecution of the suit for separation from bed and board, within the meaning of article 152 of the Civil Code. It appears from the evidence that the defendant, on visiting his children under the order of court, frequently remained at the house after the time stipulated in the ordei’, and would engage in conversation with his wife; that they' wpre on friendly terms; that on several occasions when the plaintiff was serving the children the evening meal she would, at the request of one of the younger children, send the defendant a glass of iced tea, which he would drink on the front porch; that on one occasion the plaintiff was entertaining the Girls’ Auxiliary in the evening when her husband happened to be there to visit his children, and in passing refreshments she gave the defendant a saucer of cream and some cake. At plaintiff’s request the defendant accompanied her to and from church on several occasions during a series of religious services ; that they would sit together in church, and on their return from church they would sit on the front porch and engage in conversation until a late hour. On one occasion, at the invitation of a neighbor and his daughter, plaintiff and .defendant rode together with them in their automobile from the church to their home. On another occasion the defendant accompanied his wife home from a picture show, and again he met her at the swimming pool and went home with her. Beyond the statement of the defendant that he and his wife had, since the suit was filed, lived together as husband and wife, the foregoing incidents and circumstances constitute the sole basis of the claim that there has been a reconciliation between thorn.
[1] In turning the dwelling over to "the plaintiff and her children the ^defendant did not reserve any room or any part of the house for himself. There is no pretense that he ever occupied any room in the house after he surrendered it to his wife. Nor on his visits to see his children and on returning from church with his wife did he ever go into the house further than the front porch. He never ate a meal in the house with his wife, and children, nor was he ever invited by his wife to do so. It is true the defendant testified that he had lived with his wife as man and wife on several occasions after the filing of the suit. But this is a mere conclusion of his — a conclusion which is not sustained by the evidence in the record. He doubtless meant that, from the association with his wife, and her friendly feeling for him exemplified in the various incidents referred to, there was forgiveness on her part, and in that sense they were liv *535 ing together as husband and wife. In the light of the facts testified to he could not have meant that they had lived together as husband and wife in the sense that cohabitation and the marital status had been resumed. The wife denies that any such relation had existed between them since her suit was filed, and she relates an instance when her husband, on a visit to see their sick baby, had attempted to enter her bedroom and she got out a pistol and had to threaten to kill him before he would desist. The husband denied that his wife had ever driven him away from the house with a gun, but he did not take the stand and deny the incident related by the wife after she had testified.
[2] If the plaintiff can sustain the facts set out in her petition, and she was not equally at fault with her husband, she would clearly be entitled to a separation from bed and board. Before she can be denied that right it must clearly appear that she has condoned the offense of her husband, and that a reconciliation, a renewal of the marital status, has taken place. The burden of proving that fact was on the defendant. There is no doubt that the plaintiff was willing to forgive the acts of indignity and ill treatment of her husband and to resume wifely relations with him under certain conditions, and if she could have been convinced that the defendant would treat her as a husband should act towards his wife. But that such conditions have not been met, and that a reconciliation has not been effected, we have not the slightest doubt. There has been no repentance on the part of the offending husband. EGe does not pretend that he has made any promises to his wife, nor any offers or overtures of reconciliation. According to his theory the reconciliation and what he terms “living together as husband and wife” was wholly the unsolicited act of the plaintiff. He was dubious about going to Church with his wife. He thought there was some trick in her request for him to go to church with her; that he might be trapped in some way. When pressed by his own counsel as to what his wife said to him in a conversation on the porch, he vauntingly replied, “Oh, she gave me to understand that she thought the world of me, and then some.” “Her request of me was that I join the Baptist Church, and everything would be lovely.” We have-carefully considered the testimony, and are convinced that there has been no cohabitation between the plaintiff and defendant since the filing of the suit for separation, and that, while the incidents related disclose a forgiving Christian spirit on the part of* the plaintiff, and a friendly feeling for the defendant as the father of their children, such circumstances do not authorize the conclusion that a renewal of connubial relations between them had taken place at the time or before the trial of the case in the court below. The fact is that the parties were living apart at the time the plaintiff’s suit was dismissed. They occupied different houses. The judgment so recognized. That judgment gave the control and custody of the children to the plaintiff, and directed her to carry the children to the defendant at his boarding place on two evenings out of each .week. The judgment in effect denied to the defendant the right to visit his children at the home of their mother. It is difficult to conceive how there can be a reconciliation, in law, while the husband and wife continue to live apart and out of the marriage relation in fact.
[3, 4] Oiv. Code, art. 152, declares:
“The action of separation shall be extinguished by the reconciliation of the parties, either after the facts which might have given ground to such action, or after the action had been commenced.”
It will be observed that the Code does not define what acts of the parties shall be deemed sufficient to establish a reconciliatidn which would be a bar to an action for separation or for a divorce. It must be apparent, *537 however,' that what is meant is that there must be a reconciliation in fact, and not in theory. In the construction of statutes, words are to be taken and construed in the sense in which they are understood in common language, taking into consideration the text and subject-matter relative to which they are employed. The subject-matter with which the statute under consideration deals •“is an action for separation and the extinguishment of such action by a reconciliation.” The word “reconciliation” in the sense in which it is used necessarily presupposes a separation — a break in the marriage relation —and when there is such a separation, such a break in the marital status, a reconciliation can only mean the mending of the break; a going back together; living together again as husband and wife; a resumption or a renewal of the former marriage relation. The mere forgiveness on the part of the injured spouse, and the friendly relationship and association between the parties, in the absence of their coming together in the marriage status, will not be held to be a reconciliation within the meaning of the statute.
In all of the cases cited by defendant’s counsel (O’Grady v. Larkin, 48 La. Ann. 853, 19 South. 740 ; Schaub v. Sehaub, 117 La. 727, 42 South. 249 ; Vatter v. Vatter, 131 La. 1073, 60 South. 689) in which it was held that an action for separation or divorce was barred by reconciliation, it appeared that the parties had resumed their marriage state and had been living together as husband and wife. In Hill v. Hill, 112 La. 770, 36 South. 678, it was said that a reconciliation between spouses after facts have occurred which would give rise for an action for divorce, or for separation from bed and board, has the same effect in Louisiana as “condonation” does in the common-law states. 2 Schouler on Marriage, Divorce, Separation, and Domestic Relations (6th Ed.) p. 1887, defines “condonation” as:
“The conditional forgiveness or remission, by one spouse, of some matrimonial offense of which he or she knows the other to be guilty. And the rule is that, while the condition of forgiveness remains unbroken by the former offender, condonation from whatever motive it may have proceeded remains an absolute barrier ■ to all divorce remedies founded on that particular grievance.”
The same author (page 1890) declares the general rule to be that any cohabitation with the guilty party after the commission of a matrimonial offense, if it be upon the- injured party’s knowledge, will amount to conclusive evidence that the offense in question has been conclusively forgiven. And it is further stated that condonation takes place after clear and convincing knowledge of the offense is brought home to the libelant who thereafter cohabits with the libelee. Perfect condonation should appear not only by express forgiveness, but by renewal of cohabitation. game authority, p. 1891. A mere offer of reconciliation by the injured spouse may constitute condonation, and cruelty in one may be condoned by the other party soliciting reconciliation and renewing cohabitation ; but, according to the weight of authority, an unaccepted offer to resume intercourse is unavailing to the offender as amounting to condonation until the offer is accepted.
In 19 Corpus Juris, p. 83, it is said:
“Condonation, in the law of divorce, is the forgiveness of an antecedent matrimonial offense on condition that it shall not be repeated and that the offender shall thereafter treat the forgiving party with conjugal kindness. There can be no condonation of abuse of a wife by her husband where the past was not discussed and there was no promise of conjugal kindness in the future. Ellithorpe v. Ellithorpe, 100 N. W. 328.”
“But since sexual intercourse is not necessarily implied from the fact that the parties are living in the same house, it has been held that the fact that a wife remains in the matri•monial domicile performing the usual household duties for the husband, pending an action by her for a divorce, should not be considered as a condonation.” 19 Corpus Juris, p. 87.
*539 And the same author declares that one of the requirements of condonation is restoration of the offending party to all marital rights, and that a single act of sexual intercourse is insufficient to constitute condonation. 19 Corpus Juris, p. 87.
[5] Under the authorities cited, it is clear, we think, that, in order to constitute a reconciliation that would bar an action for separation from bed and board, in the sense of article 152 of the Civil Code, there must be not only a mutual forgiveness on the part of the injured spouse, and acceptance by the offender, expressed or implied, but there must be a restoration and renewal of the marital relation. We are not forgetful of the rule of public policy that the courts should not readily lend their aid to effect a separation of spouses except in extreme cases, especially where there is issue of the marriage. The well-being of the children, good morals, and the interest of society require that the marriage relation should be surrounded with every safeguard, and its dissolution only decreed where the complaining party has clearly and sufficiently brought himself or her1 self within the terms of the law. Yet, on the other hand, where statutory requirements have been met, and where, as in this case, the injured wife has demanded a judicial separation from bed and board from her husband on the ground of excessive and continued cruel and inhuman treatment, such as to render her living with her husband intolerable, the doors of the court should not be closed against her further prosecution of her suit for separation, and she should not be held estopped" unless there is satisfactory and convincing proof of' a reconciliation, a condonation on her part, the resumption of the former marital status. No harm can be done by leaving the ease open for prosecution. If the plaintiff should succeed in establishing her right to a separation, the law affords ample time and opportunity for repentance of the offending spouse, the acceptance and forgiveness by the injured one, and a reuniting of connubial relationship. And this may be devoutly hoped for, in the interest and welfare of their common offspring, to whom both parents appear to be devoted.
For the reasons assigned, it is ordered and decreed that the judgment appealed from be avoided, annulled, and set aside; that the motion to dismiss be overruled, and the case remanded to the lower court to be proceeded with according to law and the views herein, expressed. The defendant to pay the costs of this appeal, and all other costs, to await the final judgment in the case.