CARTER, Judge.
This is an appeal from a judgment of the trial court sustaining a peremptory exception raising the objection of no cause of action.[1]
PACTS
Appellant herein, Nancy Gaiennie DeVil-lier, filed a suit for separation from bed and board on September 22, 1986, in the Family Court in East Baton Rouge Parish and also asked for child support and alimony pendente lite. Appellee, Mark Stephen DeVillier, filed an answer and reconven-tional demand on November 7, 1986, seeking a judgment of separation alleging cruel treatment. A stipulated judgment on rules was entered into by the parties, and judgment was signed on December 15,1986. In the stipulated judgment, Mr. DeVillier was ordered to pay child support in the sum of $350.00 per month in semi-monthly installments of $175.00, each payable on the 1st and 15th of each month, beginning November 15, 1986. He was further ordered to pay alimony pendente lite in the sum of $450.00 per month for a period of six months beginning October 1,1986, and ending March 15, 1987, payable in semi-monthly installments of $225.00 on the 1st and 15th of each month, with credit on amounts previously paid. A judgment of separation incorporating the stipulated judgment on rules was signed on January 23, 1987, and further provided that the alimony pendente lite would continue from April 1, 1987, through June 15, 1987, in the sum of $250.00 per month, payable in semi-monthly installments of $125.00 on the 1st and 15th of each month.
Either “at the end of January or beginning of February, 1987,”[2] the parties recommenced living together in East Baton Rouge Parish and then moved to Crowley shortly thereafter. Apparently, the parties lived together for approximately two months and subsequently separated again. Ms. DeVillier then filed a petition for sepa *1144 ration from bed and board in Acadia Parish on July 13, 1987.
Thereafter, Ms. DeVillier brought a rule for contempt against appellee in East Baton Rouge Parish for payment of the ar-rearages due for both child support and alimony pendente lite, as well as for interest on such payment, reasonable attorney’s fees, and all costs pursuant to the East Baton Rouge Parish judgments of December 15, 1986, and/or January 23, 1987.
Mr. DeVillier filed an exception pleading the objection of no cause of action[3] in these proceedings on November 10, 1987, alleging that the stipulated judgment on rules of December 15, 1986, was “null and void” and, implying that the judgment of January 23, 1987, decreeing child support payments and alimony pendente lite was null and void because the parties had reconciled for approximately 2-3 months after the rendition of these judgments.
After trial on the peremptory exception raising the objection of no cause of action, the trial court sustained the exception rais-. ing the objection of no cause of action holding that the reconciliation extinguished all decrees relating to the judgment of separation including any arrearages due at the time of reconciliation for child support and alimony. Formal judgment sustaining Mr. DeVillier’s peremptory exception raising the objection of no cause of action and dismissing Ms. DeVillier’s rule for contempt was signed on April 4, 1988, and appellant has perfected this devolutive appeal.
ASSIGNMENTS OF ERROR
Appellant contends that the trial court erred as follows:
1. The trial court erred in sustaining appellee’s peremptory exception raising the objection of no right of action and dismissing appellant’s rule for contempt herein.
2. The trial court erred in conclusively finding that the parties had reconciled in the spring of 1987.
3.The trial court erred in holding that the purported reconciliation vitiated appellant’s vested rights to collect ar-rearages from appellee for child support and alimony pursuant to judgments rendered on December 15, 1986, and January 23, 1987.
DISCUSSION
1. Reconciliation
Appellant apparently contends that even though she and her husband resumed living together no reconciliation took place between the parties. Although it may be conceivable that parties could resume living together for several months and not effect a reconciliation, it is clear that a reconciliation did take place in the instant case.
Appellee testified unequivocally that they separated for approximately three months, reconciled in East Baton Rouge Parish, and then moved to Crowley shortly thereafter. It was further corroborated by Ms. DeVillier’s sister, Gail Gaiennie, who testified as follows:
Q Are you aware that the parties obtained a legal separation in Baton Rouge sometime in December of 1986?
A I don’t know what date they obtained the legal separation. I know it was the end of ’86 or first of ’87.
Q Are you aware that they subsequently reconciled and moved to Crowley?
A Yes sir.
Q You probably don’t know the exact date of that either, but give us your best idea of when that might have took place?
A February is my best guess.
Q February of ’87?
A Oh, yes, I’m sorry.
Q And they reconciled at that time?
A Yes.
Q And moved to Crowley, Louisiana?
A Yes sir.
*1145 Q Is it also your understanding that they obtained a legal separation in Crowley?
A Yes sir.
Appellant testified that even though they did resume living together, she never did freely live with appellee of her own accord. Yet, she employed an attorney and filed a proceeding for separation in the 15th Judicial District Court for the Parish of Acadia on July 13, 1987, alleging she and appellee separated in May of 1987. Pursuant to appellee’s petition, another judgment of legal separation was rendered in those proceedings on August 21, 1987. Considering all of the above, the contention that no reconciliation ever was effected between the parties is without merit and frivolous.
2. Effect of Reconciliation on First and Second Judgments Rendered in East Baton Rouge Parish
To summarize the sequence of events, there was a stipulated judgment setting alimony and child support in East Baton Rouge Parish on December 15, 1986. There was a stipulated judgment of separation in East Baton Rouge Parish signed on January 23, 1987. Each of these judgments provided for alimony and child support. It appears that the parties reconciled either at the end of January or the first of February, 1987. However, it is not clear from the record as to the exact time of reconciliation.[4] Therefore, under the previous judgments, Mr. DeVillier would have been obliged to pay child support beginning November 15, 1986, and alimony beginning October 1, 1986, to whatever date in January or February that the reconciliation was effected.
The two cases that are relevant to our inquiry are Cummings v. Cummings, 469 So.2d 17 (La.App. 1st Cir.1985), and Dooley v. Dooley, 443 So.2d 630 (La.App. 3rd Cir.1983), writ denied 444 So.2d 1215 (La.1984). In Cummings v. Cummings, supra, this court held that reconciliation does not result in a waiver of accrued child support. Although there is some language in the opinion of a broader scope, essentially Cummings held that where there are past due child support arrearages due, once the parties effect a reconciliation, it does not affect the vested rights of the parties to the child support arrearages.
In Dooley v. Dooley, supra, a slightly different situation was presented. The parties were married in 1965 and lived together until they separated in 1978. A judgment of separation was signed on May 1, 1978, and the wife was awarded $100.00 per week child support. The parties reconciled in 1980 and lived together for the next eighteen months, separating again in June of 1981. Neither party thereafter filed a new separation suit, nor did either party seek a further judicial determination of custody or child support. When the parties separated the second time, the child remained in the actual custody of the wife and the husband voluntarily resumed the payment of child support, but at a lesser amount than $100.00 per week. The wife subsequently sued for past due child support, along with attorney’s fees, and sought past due child support payments after the second separation based on the amounts set forth in the judgment after the first separation. In Dooley, the court stated:
We do not believe that the rationale of the Lewis case requires this result. True, La.C.C. art. 152 dealing with reconciliation by its terms extinguishes only the action of separation. Accepting the fact that the support decree was independent of the judgment of separation, however, does not mean that it survived the reconciliation. A reconciliation is a resumption or renewal of the former marriage relation. Martin v. Martin, 151 La. 530, 92 So. 46 (1922). Orders of custody and child support are in their nature subject to change or termination. They are subject to change according to the circumstances and will expire on the happening of certain events. For example, custody and child support awarded under La.C.C. arts. 146 and 157 expire upon the child’s majority (R.S. 9:309), as *1146 does parental authority under article 216. King v. Sanchez, 273 So.2d 45 (La.App. 4th Cir.1973). Also, there are times when automatic termination occurs by operation of law. Halcomb v. Halcomb, 352 So.2d 1013 (La.1977). We find this case to be one where there has been an automatic termination by operation of law. We hold that custody in one spouse, the right to which depends upon a separation of the spouses, either de facto (R.S. 9:291) or de jure (La.C.C. arts. 146 and 157), cannot exist when the parents have become reconciled and there is no longer separation either de facto or de jure. The legal effect of the termination of the separation in the instant case was to cause the child to once more fall under the parental authority of both parents provided by La.C.C. art. 216. Legal custody in one spouse cannot co-exist with the parental authority of article 216. The order of child support, which is dependent on custody [Dubroc v. Dubroc, 388 So.2d 377 (La.1980)], likewise fell. The custody and support orders, having terminated, could not be resurrected by a subsequent return to living separate and apart. [443 So.2d at 631-632]
Therefore, reconciling the Cummings case with the Dooley case, we conclude that Cummings dictates that a reconciliation does not waive accrued child support. However, Dooley holds that once the parties reconcile and then separate for a second time that the reconciliation terminates the order of child support and this order is not resurrected by a subsequent return to living separate and apart. Clearly, then a reconciliation terminates the award of child support and/or alimony for any future periods when the parties live together or separate for a second time. However, the rationale of Cummings dictates that the accrued awards of custody and/or alimony are not waived and remain extant and enforceable.
Considering the above, the trial court was in error in sustaining the exception of no cause of action insofar as any sums that may have been due by Mr. DeVillier to Ms. DeVillier from the rendition of the first judgment awarding child support and alimony to the reconciliation which took place about February of 1987. The record is not sufficiently clear to indicate the amounts paid or not paid, nor the periods of time involved.
Therefore, for the reasons assigned, the judgment of the trial court sustaining the exception of no cause of action is reversed, and the case is remanded for trial on the merits in accordance with the views expressed herein.
REVERSED AND REMANDED.
LANIER, J., concurs and assigns reasons.
LeBLANC, J., concurs for reasons assigned by LANIER, J.

. Although the exception filed is entitled "Exception of No Right of Action,” the substance of the pleading raised the objection of no cause of action.

. At the trial on the exception, appellee testified as follows:
Q Okay, did ya'll subsequently reconcile?
A Yes we did.
Q And where did you reconcile at?
A We reconciled here in East Baton Rouge Parish, and then we moved to Crowley shortly after?
Q When did ya’ll reconcile?
A It was in February.
Q Of 1987?
A The end of January.
Q Of 1987?
A Yes.
Q And then ya’ll moved to Crowley, Louisiana? A Right.
Q How long did ya’U live here prior to moving to Crowley?
A Lived here?
Q Uh-hum, after your reconciliation in January of ’87?
A About three weeks.
Q How long did you and your wife live together after the reconciliation?
A Approximately two months.
Q Okay, and when did ya’ll subsequently separate, do you remember the date?
A Not right offhand.

. See Footnote 1, supra.

. See Footnote 2, supra.