568 So.2d 1111 (1990)
Tommie Eugene REARDEN, Appellant,
v.
Maxine Annette REARDEN, Appellee.
No. 21793-CA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1990.
*1113 Ronald J. Miciotto, Shreveport, for appellant.
Charles J. Neupert, Jr., Shreveport, for appellee.
Before NORRIS and LINDSAY, JJ., and JASPER E. JONES, Judge Ad Hoc.
NORRIS, Judge.
Tommie Eugene Rearden appeals the judicial partition of community property owned by himself and Maxine Annette Rearden, his former wife. Mrs. Rearden answers the appeal. The trial court awarded specific proportions of the husband's military retirement and the wife's private retirement account to each party. In addition, it granted Mr. Rearden a credit against Mrs. Rearden's portion of the military retirement for accumulated permanent alimony paid. The parties reached a voluntary partition of the other community assets. For the reasons expressed, we reverse in part, amend in part, and render.

FACTS
Mr. Rearden joined the United States Air Force June 15, 1961 while living in Missouri. He married Mrs. Rearden in 1962 and remained domiciled in Missouri until February 1976 when he was transferred to Barksdale Air Force Base, Bossier City, Louisiana. Later that year the couple bought a house in Bossier City. Mrs. Rearden began working for Pioneer Bank in January 1978. On July 1, 1981 Mr. Rearden retired from military service and in August 1982 he applied, for tax reasons, for Veterans Administration Disability benefits to replace a portion of his military retirement pension.
Marital difficulties ensued and on December 31, 1983 Mr. Rearden left the marital home. Mrs. Rearden filed a petition for separation on January 5, 1984 and obtained a judgment of separation on February 7, 1984. The judgment dissolved the community of acquets and gains retroactive to the filing of the petition for separation and ordered Mr. Rearden to pay $300 per month alimony pendente lite and $300 per month child support. He actually paid Mrs. Rearden $720 per month which included $120 per month over and above the judgment to assist with expenses.
The couple reconciled on December 15, 1984 and remained together until March 28, 1985. Both parties testified that they did not execute a matrimonial agreement to reestablish the community either at this time or later. After the second separation in March 1985 the parties agreed Mr. Rearden would pay $300 per month for child rearing expenses and $420 per month for the house payment.
On June 13, 1986 Mr. Rearden filed for a final divorce. Mrs. Rearden reconvened requesting, among other things, alimony *1114 pendente lite; by judgment-on-rule the court awarded alimony pendente lite of $500 per month commencing August 1, 1986. On October 16, 1987 Mr. Rearden was granted a judgment of final divorce. On December 4, 1987 Mrs. Rearden was awarded a judgment of permanent alimony commencing September 1, 1987 in the amount of $400 per month.

TRIAL COURT JUDGMENT
The trial for judicial partition was held in June 1988 and judgment was signed on September 20, 1989. The trial court ordered, pursuant to LSA-R.S. 9:2801, that Mrs. Rearden receive an interest of 47.9% in the military retirement pension, specifically including V.A. Disability pay. It calculated that Mrs. Rearden's interest had accrued to a sum of $10,982.37 from July 1986 until May 1989, prior to the partition judgment. It also found that Mr. Rearden was entitled to a 50% interest in the Pioneer Bank Retirement account; therefore, it ordered that ½ the cash value of that account ($5,944.00) and all permanent alimony she had received since September 1987 ($8,400.00) be applied against her share of the military retirement pension. The net effect of the judgment was to give Mr. Rearden a credit of $3,361.13 to be satisfied out of the community property assets. The judgment reduced the permanent alimony to $72.63 a month effective the date of judgment because of the change in circumstances caused by Mrs. Rearden's recovery of 47.9% of the military retirement benefits and Disability pay. The court also ordered that Mr. Rearden would not be reimbursed for house payments.
On appeal Mr. Rearden argues the trial court erred in subjecting his V.A. Disability payments to Louisiana's community property law. Mr. Rearden also asserts the court made a clerical error in computing his credit for accumulated alimony paid. By her answer to the appeal Mrs. Rearden claims the court erred by granting a credit to Mr. Rearden for accumulated permanent alimony paid. She further argues that the trial court improperly calculated her portion of the military retirement pension. She claims she should have started receiving her portion of the benefits as of January 5, 1984, the date of termination of the community, rather than July 1986. She also requests, in the event we find the Disability payments not to be community property, that we increase her alimony by an amount equivalent to her award from the trial court for Disability payments. We find merit in Mr. Rearden's argument as to disability benefits. However, we also find merit in the other arguments presented by Mrs. Rearden. We therefore reverse in part, amend in part, and render.

DISABILITY PAYMENTS
Mr. Rearden served 20 years in the United States Air Force. He retired July 1, 1981 and applied for Veterans Administration Disability payments in August 1982. The government apportioned 10% of his military retirement pension as Disability payments and required him to waive an equivalent amount of his military retirement benefits. Therefore, he received the same sum as before, only with part of his retirement benefits designated as non-taxable Disability pay. Mr. Rearden was receiving $71.00 per month for Disability pay as of the time of the trial for judicial partition. He claims the Disability payments received are not subject to Louisiana community property law.
The Uniformed Services Former Spouses' Protection Act (The "Act"), 10 U.S.C. § 1408(c)(1) clearly states:
Subject to the limitations of this section, a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court. (emphasis added)
This provision allows state courts to partition, upon dissolution of a marriage, the military retirement benefits of one spouse in accordance with that state's marital *1115 property law. However, 10 U.S.C. § 1408(a)(4)[1] stated:

"Disposable retired or retainer pay" means the total monthly retired or retainer pay to which a member is entitled (other than the retired pay of a member retired for disability under Chapter 61 of this title)[.] (emphasis added)
The Act does not grant state courts the power to allocate total retirement pay, including V.A. Disability payments for which a portion of the military retirement pension was waived. Mansell v. Mansell, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). Prior to the Mansell decision, this court applied Louisiana law to characterize V.A. Disability payments received in lieu of military retirement benefits as community property. Campbell v. Campbell, 474 So.2d 1339 (La.App. 2d Cir.1985), writ denied 478 So.2d 148 (La.1985). However, subsequent to the Mansell decision this court has stated that V.A. Disability benefits received in lieu of military retirement benefits are not subject to Louisiana's community property law. Tarver v. Tarver, 557 So.2d 1056 (La.App. 2d Cir.1990), at fn. 1, writ denied, 563 So.2d 877 (La.1990). This subsequent result is also consistent with the classification scheme for marital property under Missouri law. In re Marriage of Cox, 724 S.W.2d 279 (Mo.App. 1987). Under the authority of Mansell, we reverse that portion of the judgment that divides the V.A. Disability benefits into community shares.

ACCUMULATED ALIMONY PAID
By answer to the appeal, Mrs. Rearden argues the trial court erred in awarding Mr. Rearden a credit for accumulated permanent alimony paid. The December 1987 judgment ordered Mr. Rearden to pay Mrs. Rearden $400 per month permanent alimony commencing September 1, 1987. The partition judgment, however, allowed Mr. Rearden to offset the accumulated military pension owed to Mrs. Rearden with all permanent alimony payments made since September 1987. In effect, the court denied Mrs. Rearden a portion of her community property.
A former spouse's share of community property cannot be reduced for accumulated permanent alimony payments received.[2]Dugas v. Dugas, 544 So.2d 111 (La.App. 3d Cir.1989); Gottsegen v. Gottsegen, 503 So.2d 588 (La.App. 4th Cir.1987), writ denied, 503 So.2d 1019 (La.1987). In addition, LSA-R.S. 9:2801(4)(b) provides:
The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value. (emphasis added)
Permanent alimony is not classified as a community asset since the community terminates upon divorce. LSA-C.C. art. 2356. Thus the community property, which does not include permanent alimony, must be allocated equally between the spouses in *1116 judicial partition. The trial court erred in crediting accumulated permanent alimony paid by Mr. Rearden against the accumulated military pension he owed. This portion of the judgment will be reversed.

MRS. REARDEN'S PORTION OF THE MILITARY RETIREMENT PENSION
The trial court determined that under LSA-C.C. art. 155 B the parties' reconciliation of December 1984 effected a reestablishment of the community retroactive to the filing of the petition for separation. It further found the community was not terminated until Mr. Rearden filed his petition for final divorce, June 13, 1986, and it allocated the military retirement pension from June 1986 only.
Art. 155 B (as amended by Acts 1985, No. 525 § 1) states:
Upon reconciliation of the spouses, the community shall be reestablished between the spouses, as of the date of filing of the original petition in the action in which the judgment was rendered, unless the spouses execute prior to the reconciliation a matrimonial agreement that the community shall not be reestablished upon reconciliation. This matrimonial agreement shall not require court approval. (emphasis added)
However, the reconciliation in the instant case occurred on December 15, 1984. At that time, art. 155 read in part:
Upon reconciliation of the spouses, the community may be reestablished by matrimonial agreement, as of the date of filing of the original petition in the action in which the judgment was rendered. (emphasis added)
It is well settled that amendments to art. 155 are not retroactive. Conner v. Conner, 515 So.2d 468 (La.App. 1st Cir.1987); Freeman v. Freeman, 430 So.2d 673 (La. App. 2d Cir.1983), writ denied, 435 So.2d 449 (La.1983); LaFleur v. Guillory, 181 So.2d 323 (La.App. 3d Cir.1965), writ refused, 248 La. 1099, 184 So.2d 24 (1966). A matrimonial agreement must be made by authentic act or act under private signature duly acknowledged by the spouses. LSA-C.C. art. 2331. Both Mr. and Mrs. Rearden testified that they executed no such document. In accordance with LSA-C.C. art. 155 A, the community was terminated January 5, 1984 and despite the reconciliation there was never a reestablishment of the community under the law applicable at the time. Therefore, on January 5, 1984 Mr. and Mrs. Rearden became co-owners in indivision of the assets formerly classified as community. Lococo v. Lococo, 462 So.2d 893 (La.App. 4th Cir.1984), writ denied, 462 So.2d 889 (La.1985). Mrs. Rearden is entitled to her portion of the military retirement pension paid to Mr. Rearden since January 5, 1984, and the trial court's holding to the contrary will be reversed.
The parties were domiciled in Missouri from June 15, 1961, when Mr. Rearden joined the U.S. Air Force, until February 1976. They were domiciled in Louisiana from February 1976 through July 1, 1981 at which time Mr. Rearden retired. Movables acquired by married persons are subject to the law of the domicile of the acquiring spouse. LSA-C.C. art. 15. Since retirement benefits are movables, a state's law should be applied to the portion of benefits acquired while the military spouse was a domiciliary of that particular state. Howard v. Howard, 499 So.2d 222 (La.App. 2d Cir.1986); Schueler v. Schueler, 460 So.2d 1120 (La.App. 2d Cir.1984), writ denied, 464 So.2d 318 (La.1985). Mr. Rearden's military service spanned 240 months, of which 175 were served while he was domiciled in Missouri and the other 65 in Louisiana. Therefore, Missouri law governs both classification and distribution of 73% of the military pension while Louisiana law governs 27%. Howard, supra; Schueler, supra.
According to Missouri law, military nondisability retirement pay acquired by either spouse after marriage but before legal separation is classified as marital property. Coates v. Coates, 650 S.W.2d 307 (Mo.App.1983); Daffin v. Daffin, 567 S.W.2d 672 (Mo.App.1978). The state of Missouri applies an equitable distribution theory to divide marital property and give each spouse a fair and equitable share. In re Marriage of Cox, supra. This is in *1117 contrast to Louisiana law which classifies military retirement benefits acquired during the existence of the community as community property. Rohring v. Rohring, 441 So.2d 485 (La.App. 2d Cir.1983). In addition, Louisiana's judicial partition statute requires a division of community assets and liabilities such that each spouse receives property of an equal net value. R.S. 9:2801(4)(b).
Mr. Rearden was receiving $683.45 government pay as of the trial for partition of property. This figure included $612.45 per month military retirement benefits and $71.00 per month Disability pay. These amounts changed periodically to reflect cost of living adjustments. The total nondisability military retirement benefits Mr. Rearden received between January 1984 and September 1989 was $39,171.60.
The court applied the Sims[3] formula to determine Mrs. Rearden's appropriate share of military retirement pension. It applied this formula under both Missouri law (governing 73% of the military pension) and Louisiana law (governing 27% of the military pension). We find no error, under either Missouri or Louisiana law, in the court awarding to Mrs. Rearden this 47.9% proportion of nondisability military retirement benefits prospectively from the date of the judgment of partition ($293.36 per month as of September 20, 1989). We further acknowledge that Mrs. Rearden is entitled to the same proportion (47.9%) of the nondisability military retirement governed by Louisiana law (27%) from January 1984 until the judgment of partition, which amounts to $5,066.06, under the equal net value partition theory of R.S. 9:2801.
However, Missouri law does not mandate a division of marital property such that each spouse must receive equal net value. Anderson v. Anderson, 656 S.W.2d 826 (Mo.App.1983). Rather, it applies the equitable distribution theory. In re Marriage of Cox, supra. There are four nonexclusive factors to be considered in making a fair and equitable division of marital property. These are: (1) each spouse's contribution to the acquisition of marital property; (2) the property value set aside to each spouse; (3) each spouse's economic circumstances when division of property becomes effective; and, (4) the conduct of the parties during the marriage. Anderson, supra.
Mrs. Rearden became a co-owner in indivision of the military retirement pension on January 5, 1984. Lococo, supra. She was awarded $300 per month alimony pendente lite and $300 per month child support from January 1984 until December 1984. In addition, Mrs. Rearden received an extra $120 per month for assistance with expenses. She was continuously employed with Pioneer Bank during this period. Economic circumstances including alimony, child support and earnings from employment are considerations to take into account in determining a fair and equitable division of marital property under Missouri law. Anderson, supra.
From December 1984 through July 1986 Mrs. Rearden received the equivalent of monthly payments of $720 which the parties agreed were to assist in paying child rearing expenses and the house note. Reconciliation terminates an award of child support and alimony pendente lite. DeVillier v. DeVillier, 543 So.2d 1142 (La.App. 1st Cir.1989); Yorsch v. Yorsch, 503 So.2d 616 (La.App. 4th Cir.1987). Mr. Rearden's contribution to marital property was significant during this time period. In addition, he assisted Mrs. Rearden's economic circumstances with his monthly payments.
Mrs. Rearden was awarded alimony pendente lite in July 1986 of $500 per month. Their son was no longer a minor at this time so no part of the award was child support. She was awarded $400 per month permanent alimony commencing in September 1987. In addition, Mrs. Rearden continued to receive earnings from Pioneer Bank during this entire time period.
*1118 In accordance with Missouri law, the appellate court may only interfere with the trial court's marital property division if it was so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. In re Marriage of Cox, supra. Under this standard, the trial court's division of marital property received by Mr. Rearden from January 5, 1984 until the judgment of partition on September 20, 1989 was an abuse of discretion. In order to effect an equitable distribution of the retirement pension governed by Missouri law (73%) which was received by Mr. Rearden during this period ($28,595.27), we have considered the factors enumerated in Anderson, supra. In light of all the facts and circumstances, to apply a 47.9% division to the portion of nondisability military payments governed by Missouri law (73%) would be manifestly inequitable and an abuse of discretion. The highest percentage we could affirm without working a manifest inequity would be 5% ($1,429.76). We stress that the equitable division only applies to the portion regulated by Missouri law (73%); the remainder, governed by Louisiana law (27%), remains intact during this period. The judgment is therefore amended to reflect the correct amount to which Mrs. Rearden is entitled, $6,496.82. For all months following the signing of the judgment of partition in September 1989, the trial court's judgment is affirmed. We do not address reimbursement as this issue was not appealed in this proceeding by either party.

CLERICAL ERROR
In specification of error # 2, Mr. Rearden simply states that the trial judge made a clerical error in computing the alimony for which he was entitled to receive a credit and that computation should include alimony pendente lite paid prior to September 1, 1987. He does not support this argument with any reference to the record, the judgment, or the law. He has not convinced us that there was a clerical error of any kind and we therefore reject this contention.

PERMANENT ALIMONY
It is obvious from the record that the trial court found Mrs. Rearden needed (and intended to provide) $400 per month maintenance and support in addition to her earnings. Because of the change in circumstances caused by the allocation of $327.37 per month to Mrs. Rearden for her portion of the military retirement benefits, the court reduced Mr. Rearden's alimony obligation to $72.63 per month. In her answer to the appeal, Mrs. Rearden urges that should her portion of the Disability payments be disallowed, her award of permanent alimony should be correspondingly increased. In the interest of judicial economy and in light of the change in circumstances resulting from our ruling, we amend the trial court judgment and increase Mrs. Rearden's permanent alimony to $106.64 per month effective September 20, 1989. LSA-R.S. 9:310 C; LSA-C.C.P. art. 2164.

CONCLUSION
We reverse the judgment insofar as it divided Mr. Rearden's V.A. Disability as community property. The judgment will be amended to reflect payments of 47.9 % of Mr. Rearden's nondisability military retirement effective September 20, 1989. We also reverse the court's award of a credit to Mr. Rearden for accumulated alimony paid against the portion of military pension he owed. In addition, we amend the judgment to reflect that Mr. Rearden owes Mrs. Rearden $6,496.82 for her portion of military retirement benefits which he has received since January 1984. Mrs. Rearden owes Mr. Rearden $5,944.00 for private pension benefits she is to receive from Pioneer Bank. Offsetting these liquidated and presently due amounts, Mr. Rearden owes Mrs. Rearden a total sum of $552.82. Finally, Mr. Rearden's permanent alimony obligation is fixed at to $106.64 per month effective September 20, 1989.
Judgment is therefore rendered as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the defendant herein, MAXINE *1119 ANNETTE REARDEN, and against the plaintiff, TOMMIE EUGENE REARDEN, for five hundred fifty two dollars and 82/100 ($552.82) dollars to be satisfied out of the plaintiff's separate assets.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein recognizing the defendant, MAXINE ANNETTE REARDEN, as owner of 47.9% of the plaintiff's interest in the United States Air Force Pension, excluding Disability, effective September 20, 1989, and the plaintiff is ordered to immediately effectuate her receipt of said portion.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the alimony obligation of TOMMIE EUGENE REARDEN to MAXINE ANNETTE REARDEN is reduced from $400 per month to $106.64 per month effective September 20, 1989.
The costs of this appeal are apportioned equally between the parties.
REVERSED IN PART; AMENDED IN PART; AND RENDERED.
NOTES
[1] We note that this subsection has been subsequently amended, but without affecting Mr. and Mrs. Rearden's rights in this instance. 100 Stat. 3887 (Nov. 14, 1986); 101 Stat. 282 (Apr. 21, 1987); 103 Stat. 1462, 1605 (Nov. 29, 1989).
[2] Admittedly, some earlier cases held that an alimony recipient's share of the community property could be reduced or that reimbursement was required for receipt of alimony pendente lite during the marriage. Nelson v. Nelson, 318 So.2d 68 (La.App. 1st Cir.1975), writ denied, 315 So.2d 39 (La.1975); McElwee v. McElwee, 255 So.2d 883 (La.App. 2d Cir.1971), writ denied, 260 La. 861, 257 So.2d 434 (1972); Cordaro v. Cordaro, 168 So.2d 886 (La.App. 2d Cir.1964); Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956); White v. White, 159 La. 1065, 106 So. 567 (1925). Most of these cases, however, interpret an earlier version of LSA-C.C. art. 155 to provide that the community terminated upon judgment of separation. Since the amendment, LSA-Acts 1962, No. 178, the community terminates retroactively from the judgment of separation to the date of filing of the petition for separation. Most recent cases do not reduce the community property or reimburse for alimony pendente lite paid. See Velez v. Velez, 552 So.2d 1271 (La.App. 5th Cir.1989); Phillips v. Wagner, 470 So.2d 262 (La.App. 5th Cir.1985), writ denied, 474 So.2d 948 (La.1985); Patterson v. Patterson, 417 So.2d 419 (La.App. 1st Cir.1982), writ denied, 420 So.2d 983 (La. 1982); Miller v. Miller, 405 So.2d 564 (La.App. 3d Cir.1981); Gondrella v. Gondrella, 347 So.2d 938 (La.App. 4th Cir.1977). The recent interpretation also comports with the new concept of equal management. LSA-C.C. art. 2346. Moreover, the earlier cases are distinguished from the instant case as they did not apply the offset to permanent alimony.
[3] Portion of pension attributable to credible service during existence of the community (7012 days)/pension attributable to total credible service (7321 days) × ½ × pension. Sims v. Sims, 358 So.2d 919 (La.1978).